JANUARY TERM, 1892.

COMBS v. AGRICULTURAL DITCH COMPANY.

1. IRRIGATION—REMEDY BY MANDAMUS.—The writ of *mandamus* is an appropriate remedy to compel the delivery of water for purposes of irrigation.

2. RIGHTS OF WATER CONSUMER.—A ditch company carrying water for general purposes of irrigation cannot *arbitrarily* refuse to supply an actual *bona fide* consumer.

3. DITCH COMPANIES SUBJECT TO THE CONSTITUTION.—A ditch company diverting water for general purposes of irrigation cannot by any provision of its by-laws, rules, or regulations exempt itself or its stockholders from the operation of the constitution in respect to priority of appropriation.

4. OWNERS OF DITCHES MAY ALSO BE CONSUMERS.—Those who actually construct an irrigating ditch may thereby acquire a prior right to the water diverted therein, *provided* they apply the same to beneficial use within a reasonable time.

5. MERE DIVERSION, NOT APPROPRIATION.—A mere diversion of water is not an appropriation of it within the meaning of the constitution; a diversion without application to beneficial use is unlawful.

6. PRIOR RIGHT, HOW ACQUIRED, HOW TRANSFERRED.—The ownership of a prior right to the use of water is essentially different from the ownership of stock in an irrigating company. The ownership of the stock may be acquired by descent or purchase; the ownership of the prior right can be acquired originally only by the actual beneficial use of the water, and can be acquired by transfer only by some one who will continue such use. The very birth and life of a prior right to the use of water is actual *user*.

7. DIVERSION NOT TO BE FOR SPECULATIVE PURPOSE.—The privilege of diverting water extends only to uses truly beneficial and not to purposes of speculation.

8. DIVERSION NOT TO BE EXCESSIVE.—An excessive diversion of water cannot be regarded as a diversion to beneficial use.

9. WATER CONTROVERSIES, HOW TRIED.—In determining a controversy in respect to water rights, not only the actual prior appropriations of water, but the quantity of land and the character of the soil to be irrigated are to be considered. The amount of stock or interest which the parties have in the irrigating ditch is not decisive of such a controversy.

10. SUBSTANTIAL ACCURACY ONLY REQUIRED.—Though it may not be practicable to attain mathematical exactness in measuring the flow of water, yet a reasonable approximation to substantial accuracy should be aimed at in determining controversies relating to water supply.

11. IMPROPER QUESTIONS TO BE AVOIDED.—A question to a witness upon his examination in chief, embracing the very substance of the issue on trial and calling for an answer which if accepted amounts to a determination of such issue, is an improper question.

*Appeal from District Court of Arapahoe County.*

APPEAL from a judgment denying an application for a writ of *mandamus.*

The following provisions of the constitution are referred to in the opinion :

### ARTICLE 16.

" Sec. 5. The water of every natural stream, not heretofore appropriated, within the state of Colorado, is hereby declared to be the property of the public, and the same is dedicated to the use of ·the people of the state, subject to appropriation as hereinafter provided.

" Sec. 6. The right to divert unappropriated waters of any natural stream to beneficial uses shall never be denied. Priority of appropriation shall give the better right as between those using the water for the same purpose. * * * "

" Sec. 3. The general assembly shall provide by law that the board of county commissioners, in their respective counties, shall have power, when application is made to them by either party interested, to establish reasonable maximum rates to be charged for the use of water, whether furnished by individuals or corporations."

Messrs. LEIPER & JOHNSON, and Mr. T. J. O'DONNELL, for appellant.

Messrs. MARKHAM & DILLON, for appellee.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The writ of *mandamus* has been held to be an appropriate remedy to compel the delivery of water for purposes of irrigation. In the case of *The Golden Canal Co. v. Bright,* 8

Colo. 144, a judgment awarding the writ was reviewed *upon error* in this court and affirmed. In the case of *Wheeler v. Northern Colo. Irrigation Co.*, 10 Colo. 582, a judgment denying the writ was reviewed *upon appeal* by this court and reversed. In the latter case, however, the appeal was prosecuted under the special appeals acts of 1885, Session Laws, p. 350.

Whether judgments in cases of this kind are appealable under the Code of 1887 may, in some cases, be a matter of much practical importance. Upon reaching this cause for consideration we suggested a hearing, *in limine*, upon the question of the right of appeal ; but counsel for appellee did not present any brief or argument upon the point. Under the circumstances we have concluded to consider the case as though the judgment related to a franchise. Code, section 388. The decision, however, is not to be taken as a precedent upon that question. There may be good reasons why appeals in cases of this kind should not be allowed which could not be urged against a review by writ of error.

Upon this review the vital questions are : 1. Was such a state of facts established upon the trial as entitled the petitioner Combs to have the defendant Ditch Company supply him with water for the irrigation of his land as demanded in his petition ? 2. Was any substantial error committed upon the trial by which the petitioner may have been prevented from establishing his claim to the relief demanded ?

Under the constitution and laws of this state a ditch company carrying water for general purposes of irrigation cannot *arbitrarily* refuse to supply water to an actual and *bona fide* consumer making seasonable application and offering proper compensation therefor. A refusal to supply water by the carrier, to be justifiable, must rest upon something more substantial than the mere will of the carrier. The constitutional rule that " priority of appropriation shall give the better right as between those using the water for the same purpose " must never be overlooked, though a variety of circumstances and conditions may have to be taken into consideration in determining the claim of an applicant for water in a given case.

That the petitioner Combs was in the occupancy of certain agricultural lands so located as to be conveniently supplied with water from the defendant's ditch, that he requested the defendant to supply him with water necessary for the irrigation of said lands for the season of 1888 and tendered therefor the price fixed by the board of county commissioners, and that the defendant refused to deliver the water, are matters that were either admitted or practically undisputed on the trial.

The defendant attempted to justify its refusal to deliver the water upon the ground that by the declared objects of its incorporation it was a mutual company; that it was not organized for the purpose of carrying water for others for hire; that its only obligation in the matter of carrying water was to supply its stockholders.    An inspection of the certificate by which the Agricultural Ditch Company was incorporated, as introduced upon the trial, does not sustain this ground of defense.    The certificate shows that the company was organized under the general incorporation act by certain settlers living in the arid district of Jefferson and Arapahoe counties, territory of Colorado, unprovided with water, for the purpose of irrigation, stock-raising, aiding the industrial interests of the country, and other purposes.    The certificate further shows:

" That the objects for which this company is incorporated are to irrigate lands situate in range sixty-nine, townships three and four, and other lands in Jefferson and Arapahoe counties, and territory of Colorado, and for farming, stock-raising, and other purposes."

" That the capital stock of said company shall be twenty thousand dollars, to be divided into two hundred shares of one hundred dollars each."

There is nothing in the certificate to indicate that it might not be the legitimate business of the defendant company to carry and supply water for irrigation generally to those occupying lands within the vicinity of the ditch.    Hence, we do not have to consider whether a purely mutual company might or might not stand on a different footing.

The defendant offered to introduce in evidence certain of its by-laws as follows :

" 1. No water shall be sold from the company's ditch except to stockholders.

" 2. The price of water shall always be as low as is consistent with the permanent maintenance of the ditch.

" 3. No cash dividend shall be declared on the stock of the company."

Such testimony, if it had been admitted, would not have been controlling. A ditch company diverting water from a natural stream for general purposes of irrigation cannot by any provision or declaration of its by-laws, rules or regulations, exempt itself or its stockholders from the operation of the state constitution. The unappropriated waters of every natural stream belong to the public, and are subject to appropriation by the people to beneficial use. Priority of appropriation to actual beneficial use, and not mere ownership of stock in a ditch company, gives the better right to such use.

Individuals may organize a company either by or without incorporation for the construction of an irrigating ditch, and may by such means divert the unappropriated waters of a natural stream. They may provide that their several interests in such enterprise shall be represented by shares of stock. But neither the company nor any stockholder of the company can thus withhold the water from beneficial use, nor reserve it for the future use of junior appropriators to the prejudice of prior appropriators nor to the exclusion of those who in the meantime may undertake, in good faith, to make a valid appropriation thereof. Undoubtedly, those who by labor or by the payment of money, actually construct an irrigating ditch may thereby acquire a prior right to the water which may be diverted therein, *provided* they apply the same to beneficial use within a reasonable time after such diversion. But they cannot postpone the exercise of such right for an unreasonable time, so as to prevent others from acquiring a right to the water ; nor can they thus acquire a right to dispose of the water contrary to the priority rule. Those who

construct ditches and divert water for general purposes of irrigation must within a reasonable time apply the water to beneficial use ; or else, upon proper application and for proper consideration, they must dispose of the same to those who are ready to make beneficial use of it.   If ditch companies are unwilling to be charged with such duties and responsibilities, they must leave the water in the natural stream.   The mere diversion of the water is not an appropriation of it within the meaning of the constitution ; there must be an application of the water to beneficial use within a reasonable time or the diversion is unlawful. · See *Farmers High Line C. & R. Co. v. Southworth*, 13 Colo. 111, and cases there cited.

The case of *McFadden v. County of Los Angeles*, 74 Cala. 571, cited and relied upon by counsel for defendant in error is not in point in this case.   The question involved related to a mutual company.   It does not appear that any question of priority of right to the use of water was involved ; no such question was discussed in the opinion ; nor does the provision of the California constitution referred to in the opinion, relate to the subject of prior rights.

In a carefully considered opinion recently delivered by Mr. Justice Hayt in the case of *Strickler v. City of Colo. Springs*, 16 Colo. 61, this court held that a " priority to the use of water for irrigation is a property right and may be sold and transferred separately from the land in connection with which the right ripened."   It must not be inferred from this language that such priority may be secured by the mere acquisition of stock in an irrigating company without applying the water to beneficial use.   An owner of irrigating stock cannot thus carry prior rights to the use of water in his pocket for an indefinite or unreasonable time and thereby prevent others from acquiring a *bona fide* priority by actual use.

The ownership of a prior right to the use of water is essentially different from the ownership of stock in an irrigating company.   The ownership of the stock like the title to other property may be acquired by descent or purchase ; the ownership of the prior right can be acquired originally

only by the actual beneficial use of the water. The very birth and life of a prior right to the use of water is actual *user*. A stockholder in an irrigating company who makes an actual application of water from the company's ditch to beneficial use may, by means of such use, acquire a prior right thereto; but his title to the stock without such use gives him no title to the priority. He may transfer his stock to whom he will; but he can only transfer his priority to some one who will continue to use the water. If the law were to be declared otherwise—if ditch companies were at liberty to divert water without limit and at the same time make the ownership of stock an absolute condition precedent to the right to procure water from their irrigating canals, water rights would soon become a matter of speculation and monopoly, and tillers of the soil would have to pay exorbitant rates for the use of water, or our arid lands would become unproductive. The constitution provides that the water of natural streams may be diverted to beneficial use; but the privilege of diversion is granted only for uses truly beneficial, and not for purposes of speculation. This is evident from the fact that provision is made for establishing reasonable rates to be charged for the use of water by individuals or corporations furnishing the same, the evident purpose of which is that actual and beneficial consumers of water may not be subjected to extortionate demands.

Speaking upon this subject, Mr. Justice Helm in the case of *Wheeler v. Northern Colo. Irrigation Co., supra*, used the following pertinent language: "Any unreasonable regulations or demands that operate to withhold or prevent the exercise of this constitutional right by the consumer must be held illegal, even though there be no express legislative declaration on the subject."

One witness for the defense testified that the water "was pro-rated according to the shares." The substance of his testimony was that the capital stock of the company consisted of 200 shares; the ditch carried about 6000 inches of water; hence, the stockholders were entitled to use or control the

use of thirty inches of water for each share of stock owned by them respectively. That this was the logic of his testimony was indicated by a remark of the trial judge during the introduction of the testimony, as follows: " Let me see if I have got this correct. The number of inches of water that any person was entitled to was in accordance with the number of shares that such person had, and not as to the number of acres of land that he had to cultivate."

It is not clear, however, that the trial court sanctioned such erroneous view of the law ; nor did the defendant rest its defense altogether upon such ground.

In so far as the defense was placed upon the ground that the stockholders were actual prior appropriators of water from the ditch to *beneficial use* as explained in this opinion, the defense was proper ; and if as a matter of fact the actual appropriations of water by the stockholders were prior to the application of the petitioner, and if their appropriations were equal in the aggregate to the whole amount of water carried by the ditch, the application of the petitioner was properly refused. If on the other hand there was a surplus of water remaining in the ditch after supplying prior appropriators, the petitioner was entitled to be supplied out of such surplus.

The legal theory upon which a case of this kind should be tried is very simple, however difficult it may be to apply the law to the evidence. It is plain that the quantity of land and the character of the soil which the appropriators of water from the ditch have under cultivation, as well as their actual prior appropriations of water to the irrigation of such lands, and not the number of shares of stock they may own, are the important matters to be considered in determining such a controversy. In the trial of such an issue it is also important to observe that no matter how early a person's priority of appropriation may be, he is not entitled to receive more water than is necessary for his actual use. An excessive diversion of water cannot be regarded as a diversion to *beneficial use* within the meaning of the constitution. Water in this country is too scarce and consequently

too precious to admit of waste. The constitutional rule of distribution, " first come, first served," does not imply that the prior appropriator may be extravagantly prodigal in dealing with this peculiar bounty of nature. We are aware that it may not be practicable to attain mathematical exactness in measuring the flow of water; but a reasonable approximation to substantial accuracy should be aimed at in determining controversies relating to water supply.

Another witness for the defense upon his examination in chief was asked this question : " From your experience as a farmer and in irrigation in connection with it, is there water enough in that ditch now, or has there been for the last two years to irrigate the lands which have heretofore been irrigated by that ditch ? " This question was objected to, first, on the ground that it did not appear that the witness had knowledge, and, second, because the matter embraced in the question was the question then at issue and on trial. The objection was overruled. The ruling was excepted to and is assigned for error. Without noticing the first ground of objection, it is clear that the objection was well taken upon the second ground and should have been sustained. The question was not merely introductory; it embraced the very substance of the issue which the court was then trying; and a categorical answer, such as the question called for, would, if accepted by the court, have been a complete determination of the issue. It is an elementary rule that such questions are inadmissible. We are aware that direct questions are not always to be regarded as objectionable; there are exceptions to the rule; but certainly the foregoing is not one of them. The answer in this case, though not very direct, was of such a sweeping, general and argumentative character that it is impossible to say that its effect upon the mind of the court was harmless. Counsel should not have taken the risk of such a question. The objection having been interposed in apt time and terms should have been heeded and the question withdrawn or modified. 2 Best on Evidence,

sec. 641 ; 1 Wharton on Evidence, sec. 499 and notes : 2
Phillips on Evidence, sec. 889 and notes.

There was an effort on the part of the petitioner to estab-
lish a priority of right to water from the defendant's ditch
as the successor of one Edwards who had previously owned
petitioner's land. Edwards had procured. water from the
ditch for said land during the irrigating season of 1884 and
a part of the season of 1885 by contract with the company.
For the season of 1886 he procured the water in connection
with water for other land, and it does not appear that the
ditch company had knowledge that the water was used ex-
cept for the other land. Edwards sold the land in 1887, and
it was not cultivated during that year. The petitioner came
into possession of the land early in 1888 ; and it is assumed
that he succeeded to the prior rights of Edwards to the use
of water from the ditch. The evidence in the record con-
cerning petitioner's alleged priority through Edwards is so
unsatisfactory that we do not undertake to consider it for
any purpose. Our opinion is based upon the application of
the petitioner for the irrigating season of 1888 as though
that were the beginning of his claim ; and while it is by no
means certain that he was entitled to the water as claimed
for that year, it appears that there was error on the trial
which may have affected his substantial rights in the deter-
mination of the proceeding.

In accordance with the foregoing views the judgment of
the district court is reversed and the cause remanded. As
was held in *Wheeler v. Northern Colo. Irrigating Co., supra,*
this was a proceeding by petitioner to obtain relief for a par-
ticular year merely. Hence, the petitioner cannot gain
anything by a new trial. It is therefore ordered that. he be
allowed to dismiss his action without prejudice.

*Reversed.*

Mr. JUSTICE HAYT concurs in the conclusion.

HELM, C. J. (concurring specially.)

If I correctly understand the foregoing opinion, it rests the decision of the main point exclusively upon the constitutional obligation of carriers organized for the purpose of conveying water to consumers generally. It does not declare or define the rights or obligations existing between stockholders in what may for convenience be termed mutual ditch companies, or between such companies and consumers in no way connected therewith. By the phrase "mutual ditch companies" I mean associations formed by consumers for the purpose of conveying water solely to irrigate their own lands, and not for hire; these associations may or may not be incorporated, and the respective interests of the members may or may not be represented by stock. I agree with the conclusion reached by Mr. Justice Elliott that the constitutional right of individual consumers, upon tender of the carriage fee, to water diverted by a carrier and not already applied to beneficial uses, can no more be evaded or qualified by a regulation compelling the purchase of stock as a condition precedent to use, than it can by a regulation fixing a sum in excess of the price charged for carriage, to be thus paid for the constitutional right of user. *Wheeler v. N. C. I. Co., supra.* I do not understand that my associate intends to suggest views touching the constitutional status or rights of the members of mutual companies as to each other, or as to outside consumers, and thus anticipate a question treated by the opinion as not now fairly before us.