OPPENLANDER ET AL., APPELLANTS, v. LEFT HAND DITCH CO. ET AL., APPELLEES.

1. DIVERSION OF WATER.

The water of a natural stream may be diverted and conveyed across an intervening "divide" for the irrigation of lands in the valley of another stream, and for that purpose the natural channel of the second stream may be utilized to convey and distribute the water thus diverted.

2. FAILURE TO PRODUCE WITNESS.

From the failure to produce a witness, or to explain his absence, a natural inference may, under some circumstances, arise as to what his testimony would be if produced.

3. DECREES UNDER IRRIGATION ACTS.

Decrees under the irrigation acts of 1879 and 1881, determining the priorities and amount of appropriations of the several ditches in an irrigation district, are not intended to designate the person or persons entitled to the use of the water thus appropriated.

4. APPROPRIATION IN LIEU OF RIPARIAN RIGHTS.

The constitution of this state has, to a large extent, obliterated the common law doctrine of riparian rights and substituted in lieu thereof the doctrine of appropriation.

5. WATER RIGHTS, SEVERANCE AND CONVEYANCE OF.

Water rights acquired by appropriation for purposes of irrigation may be severed, sold and conveyed separate and apart from the land in connection with which such rights were acquired; and when such severance, sale and conveyance have taken place, as by the assignment and sale of stock representing water rights in an incorporated

ditch company, a subsequent sale and conveyance of the land does not pass the title to such water rights.

Whether under any circumstances water rights may be conveyed by parol, or whether they may sometimes pass as appurtenant to the land under the terms of an ordinary deed, not decided.

*Appeal from the District Court of Boulder County.*

ACTION concerning water rights for irrigation. Appellants were plaintiffs below, and obtained a preliminary injunction against appellees. The cause was tried upon the merits, and resulted in a finding in favor of defendants. The injunction was thereupon dissolved and the action dismissed. The plaintiffs bring this appeal.

Mr. JAMES M. NORTH, for appellants.

Mr. R. H. WHITELY, and Mr. R. H. WHITELY, Jr., for appellees.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

St. Vrain creek takes its rise on the eastern slope of the Rocky mountains near the summit of the continental divide. Thus it has a good supply of water from the regions of perpetual snow. The general course of the stream is eastward through the mountainous regions of Boulder county, and thence across the plains, until it becomes a tributary of the South Platte river.

Left Hand creek is a tributary of the St. Vrain from the south; its general course is, also, eastward, until it forms a junction with the former stream some miles out upon the plains.

James creek, a still smaller stream, takes its rise between the St. Vrain and Left Hand creek, and makes a junction with the latter stream before it emerges from the foothills. Neither Left Hand creek nor James creek has as good natural water supply as the St. Vrain, their sources, respectively,

not being so far up the mountain slope; and as a consequence the natural water supply of Left Hand creek is not sufficient to irrigate the agricultural lands lying along its borders upon the plains.

Early in the 'sixties certain settlers upon the plains, along the valley of Left Hand creek, made appropriations of water from said stream for the irrigation of the lands occupied by them respectively; but as there was not enough water in the natural stream to supply their wants, they undertook to increase the supply by artificial means. At a certain point in the mountains, James creek and the south fork of the St. Vrain are but a short distance apart. Taking. advantage of this proximity of the two streams, a channel or ditch was cut through the narrow strip of land separating them. Thus water from the St. Vrain was carried into James creek, thence down the channel of the James to Left Hand creek, thence down Left Hand creek and out upon the plains to supply the settlers with water for irrigation.

The artificial channel thus uniting the St. Vrain with James creek was first constructed in 1863, and since that time said channel, including the natural channels of the James and the Left Hand below the junction, has been called the Left Hand ditch. This will not appear so strange when it is understood that the volume of water flowing in the channel of Left Hand creek was more than doubled by the original construction of the artificial channel, and that by an enlargement thereof in 1870 the stream was increased to about ten times its original size.

1. The right to divert and convey the water of a natural stream across an intervening " divide " to be used for the irrigation of lands in the valley of another natural stream, and for that purpose to utilize the channel of the second stream as a ditch to convey and distribute the water diverted from the first stream, has been distinctly recognized by this court. The diversion from the St. Vrain to the James and Left Hand creeks, as above stated, was upheld in *Coffin v. Left Hand Ditch Co.*, 6 Colo. 449.

The controversy in this case arises over a claim made by plaintiffs to the use of water from Left Hand creek, or ditch, to irrigate a parcel of land situate in sections 26 and 27, township 2, N. R. 70 W. in Boulder county, through which said stream flows.

It appears that George F. Oppenlander first settled upon the land about 1860, and by means of certain small ditches appropriated water from Left Hand creek for the irrigation of a few acres during the years 1861, '62 and '63. Oppenlander also assisted in constructing Left Hand ditch in 1863, whereby the volume of water was increased as above stated, but he never acquired the government title to the land. He testified that he *sold and turned over the place* in 1863 to one Frederick Baun, his brother-in-law, by verbal agreement, explaining to his successor how the water irrigated the land. Baun continued thereafter to occupy and irrigate the land, and subsequently obtained the government patent for it.

In 1871 Baun conveyed the land by warranty deed to one Stockdorf, and on the same day Stockdorf by similar deeds conveyed an undivided half thereof to Baun's wife and the remaining half to Baun's children, Mary, Ida, Emma and Julia, plaintiffs herein. Not long after this, Mrs. Baun having died, Mr. Baun in 1874 undertook to convey his interest in his deceased wife's estate to his said children. Baun, however, continued in possession and control of the land until shortly before the commencement of this action. In the meantime, the land having been sold for taxes, the plaintiff Oppenlander purchased the tax certificates and holds them, as he testified, for the benefit and protection of his nieces and coplaintiffs herein.

Oppenlander also in March, 1889, purchased at sheriff's sale all the right, title and interest of Baun in said premises. The plaintiff Goyn claims no interest in the land except as the lessee in possession under Oppenlander since April, 1889. The complaint alleges that Oppenlander in his lease to Goyn agreed, among other things, to furnish water sufficient to irrigate said farm, if within his power.

2. In 1866, previous to the conveyance of the land to Stock-dorf, the Left Hand Ditch Company was incorporated, and Baun became an original subscriber for one share of the capital stock. Shortly thereafter he became the owner of a second share. It appears, also, that at one time a third share was assigned to him ; but as the evidence is not clear as to the ownership of such third share when this controversy arose, and as Baun himself was not produced as a witness by his children, nor his absence explained, the inference was natural that his interest in the stock of the company was limited to two shares. It is unnecessary, however, to decide in respect to Frederick Baun's title to the third share ; he not being a party to this action, his rights are not affected by this decision ; besides, the ownership of the third share is not important in this controversy, since there is no evidence that plaintiffs or either of them ever acquired it ; and, as will hereafter appear, plaintiffs do not base their claim to water upon the ownership of stock in the ditch company.

The evidence shows that the Left Hand Ditch Company distributed water to its stockholders in proportion to the number of shares owned by them respectively; and there is nothing in this record indicating that such mode of distribution in any way conflicts with the "better right" of prior appropriators. See *Combs v. Agricultural Ditch Co.*, 17 Colo. 146.

In the course of time shares of stock in the Left Hand Ditch Company became very valuable. Baun assigned one of his shares in 1883, and the other in 1885, as collateral to secure certain loans. Failing to pay these loans, the shares were afterwards, and before the commencement of this action, sold for nearly $1,600 in the aggregate, and passed into the hands of third parties. Thereupon the ditch company shut off the supply of water to plaintiffs.

The St. Vrain and its tributaries " except the Boulder, its tributaries, and Coal creek," constitute Irrigation District, No. 5. See Session Laws 1879, p. 98.

It appears that in November, 1882, decrees were rendered

determining the priorities of the several ditches in said irrigation district under the acts of 1879 and 1881. The decrees show the amount of water appropriated by the Left Hand Ditch from the St. Vrain creek, and, also, the appropriation made by the "Holland" ditch and by the "Baun and Goyn" ditch from Left Hand creek, the two last named ditches being the ones used for conveying water to the land under consideration.

3. Plaintiffs now claim the right to the use of water from Left Hand creek, or Left Hand ditch, upon two grounds: They claim that the decrees determining the priorities and the amount of the appropriation of the several ditches taking water from Left Hand creek are *res judicata* as to the Left Hand ditch, and, also, as to all other ditches in the same irrigation district, including the "Holland" ditch, and the "Baun and Goyn ditch," above mentioned.

In respect to this claim it may be said that decrees rendered under the acts of 1879 and 1881, determining the priorities and the amount of the appropriations of the several ditches in an irrigation district, are not intended to designate the person or persons entitled to the use of the water thus appropriated. Such a decree is not *res judicata* as to the party or parties entitled to the control of a particular ditch or to the use of water conveyed through the same, but only as to the priority and amount of appropriation of such ditch.

Furthermore, it appears without contradiction that for a period of more than twenty years from and after the construction of the Left Hand ditch, while it was owned and controlled by individuals as well as after it passed into the hands of an incorporated company, Oppenlander and Baun successively claimed and enjoyed the right to the use of water by and through the Left Hand ditch, and asserted no claim as original appropriators from Left Hand creek. Such was their attitude after the rendering of the decrees in 1882 as well as before, and so continued until about the time of the bringing of this action in 1889. It must be held, there-

fore; that their rights as appropriators from the natural stream were thus voluntarily abandoned or merged in their rights as part owners and stockholders of the Left Hand ditch.

4. Plaintiffs also claim the right to water under the appropriation made by Oppenlander and Baun; they claim as grantees of the land for which such appropriation was made; they claim that by such appropriation the right to the use of water became an incident of the land and passed to them by the several deeds of conveyance above stated, under the term "appurtenances."

At common law the riparian owner is vested with certain rights in the water of a natural stream flowing through his land, and such rights pass by a conveyance of the land to his grantee, unless specially reserved. It is seriously claimed that this familiar principle of the common law in reference to natural streams applies also to artificial streams designed for purposes of irrigation.

Let us see what legal basis there is for such claim. Upon examination we find few points of analogy and many points of difference between water rights at common law and water rights under the constitution of this state. For illustration, note the following:

At common law the water of a natural stream is an incident of the soil through which it flows; under the constitution the unappropriated water of every natural stream is the property of the public. At common law the riparian owner is, for certain purposes, entitled to the exclusive use of the water as it flows through his land; under the constitution the use of the water is dedicated to the people of the state subject to appropriation. The riparian owner's right to the use of water does not depend upon user and is not forfeited by nonuser; the appropriator has no superior right or privilege in respect to the use of water on the ground that he is a riparian owner; his right of use depends solely upon appropriation and user; and he may forfeit such right by abandonment or by nonuser for such length of time as that abandonment may be implied. A riparian proprietor own-

ing both sides of a running stream may divert the water therefrom, provided he returns the same to the natural stream before it leaves his own land so that it may reach the riparian proprietor below without material diminution in quantity, quality or force; the appropriator, though he may not own the land on either bank of a running stream, may divert the water therefrom, and carry the same whithersoever necessity may require for beneficial use, without returning it or any of it to the natural stream in any manner. The appropriator may, under certain circumstances, change the point of diversion as well as the place of application of the water; he has a property right in the water lawfully diverted to beneficial use, and may dispose of the same separate and apart from the land in connection with which the right ripened to anyone who will continue such use without injury to the rights of others.

Thus it appears that the constitution has, to a large extent, obliterated the common law doctrine of riparian rights and substituted in lieu thereof the doctrine of appropriation. *Sieber v. Frink*, 7 Colo. 148; *Fuller v. The Swan River Mining Co.*, 12 Colo. 12; *Strickler v. Colo. Springs*, 16 Colo. 61; *Combs v. Agricultural Ditch Co.*, 17 Colo. 146. See, also, opinions in *Farmers' High Line Co. v. Southworth*, 13 Colo. 111, and cases there cited.

5. Where a party has constructed an irrigating ditch and acquired the right to the use of water for the irrigation of his lands through such ditch, he may undoubtedly, in connection with the sale and conveyance of the land, also, sell and convey such water right without special words for that purpose inserted in the deed of conveyance. But how shall such water right be conveyed? Counsel for appellants insist that it passes to the grantee by virtue of the word "appurtenances" in the ordinary deed, unless specially reserved. Certainly a ditch located on the land described in the conveyance would pass by an ordinary deed, not as an appurtenance, but as parcel of the land itself. But there is a manifest distinction between an irrigating ditch as a mere

artificial water course, and the right to the use of water from a natural stream to be carried through such ditch.

In *Yonkers v. Nichols*, 1 Colo. 551, it was held that the right to convey water over the land of another for purposes of irrigation may be conferred by verbal agreement, notwithstanding such right was, at common law, an interest in real estate, and so subject to the statute of frauds. In *Burnham v. Freeman*, 11 Colo. 606, it is said of a private irrigating ditch belonging to individuals, and not to an incorporated company, that " The law recognizes but two ways of acquiring, by purchase, an ownership interest in such a ditch. One is by deed or prescription, which presupposes a grant, and the other is by condemnation. An interest in such a ditch is an interest in realty. It cannot pass by a mere verbal sale." These two cases may, perhaps, be reconciled or distinguished. It is claimed that the later case is decisive of the present controversy. But we do not rest the decision of this case upon the ground that the right to the use of water in this state for irrigation may not, under some circumstances, be acquired by parol, nor upon the ground that such right may not pass to the grantee of land under certain circumstances without special words in the deed conveying the land, or other deed for that purpose.

In the present case it is clear that appellants have never acquired a valid title to the water rights in controversy. Not even a verbal agreement therefor is established by the evidence. Such water rights did not pass to appellants as an appurtenance to the land by virtue of their several deeds of conveyance. Even if such rights could under some circumstances be considered appurtenances to the land, the evidence in this case clearly shows that Frederick Baun, as the original owner, had severed such rights long before the inception of appellants' title.

In the first place, all the water rights acquired by Oppenlander and Baun as original appropriators from Left Hand creek, as a natural stream, were by their own voluntary con-

duct merged in their rights as appropriators and consumers through and by the Left Hand ditch.

In the next place, Baun's rights to water from Left Hand ditch were dependent upon, and evidenced by, his two shares of stock. These he could legally transfer only by assignment on the books of the corporation. While Baun caused the land to be conveyed to his wife and children, he did not convey the stock, nor does it appear that he entered into any contract or received any consideration for the conveyance of the stock. On the contrary, he retained the stock and continued to act as a stockholder of the company in his own name.

It is true, Baun used the stock as a means of procuring water for the benefit of the land which had been conveyed to his children; but he continued to occupy the land for his own benefit, while he pledged the stock as collateral security and thereby lost it. With the loss of the stock he lost all title to the water rights dependent thereon, so that neither he nor his grantees of the land can have any water rights by means of such stock. Whether the purchasers of such stock are so situated that they are entitled to receive and apply the water represented by such stock to beneficial use, is a question not involved in this litigation. See *Combs v. Agricultural Ditch Co., supra.*

Water rights acquired by appropriation for purposes of irrigation in this state cannot be held to be inseparably annexed to the land in connection with which such rights were acquired. Even though under certain circumstances such rights may be considered appurtenant to the land—a point we do not decide—they may undoubtedly be severed from the land; and may be sold and conveyed separate and apart therefrom; and where such severance, sale and conveyance have taken place, as by the assignment and sale of stock representing water rights in an incorporated ditch company, a subsequent sale and conveyance of the land does not pass the title to such water rights.

The Montana cases cited by appellants' counsel are readily

distinguishable from the case at bar. *Tucker v. Jones*, 8 Mont. 225; *Sweetland v. Olsen*, 11 Mont. 27. In those cases the water rights in controversy were not represented by shares of stock of an incorporated company transferable by assignment. The same observation applies to *Cave et al. v. Crafts et al.*, 53 Cala. 135.

The judgment of the district court must be affirmed.

*Affirmed.*