## [No. 3671.]

## THE CACHE LA POUDRE IRRIGATING CO. v. THE LARIMER & WELD RESERVOIR CO.

**1. WATER RIGHTS—DITCHES—MUTUAL CORPORATIONS.**

Where water rights and the ditch through which they are enjoyed are owned by the same persons as tenants in common, and they organize a mutual corporation and convey to it the ditch and water rights, and the corporation issues to the consumers capital stock which not only represents the interest of the parties in the ditch, but also represents the right to the use of water, a transfer of such stock is a transfer both of an interest in the ditch and a priority to the use of water to the amount of the stock so transferred.

**2. WATER RIGHTS—SALE—SEPARATE FROM LAND.**

A water right may be sold separate from the land and applied to other land so long as the rights of others are not infringed.

**3. WATER RIGHTS—PRIORITIES—DECREES.**

Under adjudications of priorities of water rights, the decreed priority attaches to the ditch, and as to junior appropriators it is immaterial how the water awarded to a ditch is distributed amongst its consumers, as long as the consumers have a necessity for it, and no more water is diverted than the decreed priority; and although one or more consumers may not use all the water to which they are en-

titled, yet if it is used by other tenants in common for a beneficial and necessary purpose, there is no abandonment, but the right is preserved.

4. WATER RIGHTS—TRANSFER—INCREASED ACREAGE—ENLARGED USE.

Evidence that after transfer of water rights more lands were irrigated from the ditch than before does not of itself establish an enlarged diversion. If no more water is diverted from the stream into the head-gate of the ditch, the fact that by a transfer of water rights a greater quantity of land is irrigated thereby is no injury to later appropriators, and they cannot complain of such transfer.

*Error to Court of Appeals.*

Mr. JAMES E. GARRIGUES, for plaintiff in error.

Mr. H. N. HAYNES, for defendant in error.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

This is a writ of error to a judgment of the court of appeals, reversing the judgment of the district court.

To this action, as tried below, there were several defendants, the causes of action alleged against those not appearing upon the review in either appellate court being entirely distinct and separate from that averred against the present defendant in error, which was plaintiff in error in the court of appeals, and a defendant below. The grievance against this defendant is that in buying a water right, separate from the land, and transferring the place of use to other lands, the subsequent use was thereby " enlarged " to plaintiff's injury. In its decree the district court enjoined the defendant from using, in times of scarcity, a certain quantity of the water thus sought to be transferred, until the plaintiff's priority was satisfied, but refused to restrain it in the use of a certain other quantity thereof, which relief the plaintiff also asked.

In the court of appeals, the defendant, as plaintiff in error there, assigned as error the granting of the injunction ; and the plaintiff, as defendant in error, assigned cross-errors to

the refusal of the district court to give all the relief prayed. Upon a hearing in the court of appeals the decree was reversed, no relief being awarded to plaintiff, and the injunction theretofore granted was dissolved. , 8 Colo. App. 237.

The theory upon which this case was tried by the plaintiff is that no transfer of the right to use water for irrigation can be made, or the place of such use changed, to the injury of junior appropriators. While in the pleading it might be inferred that reliance was had upon an abandonment, there is nothing in the evidence to show any subsequent appropriation by plaintiff of the abandoned right, even if such had resulted. With much of plaintiff's argument no fault can be found, and if the proof sustained the allegations of its pleadings, the relief prayed for should be awarded.

The undisputed facts are that the "Jackson" ditch has a decreed appropriation under its first two priorities of twenty-six and one twelfth cubic feet, antedating any appropriation of the plaintiff's ditch, called Greeley Canal No. 2, whose first two priorities of 280 cubic feet are junior to either of the defendant's. The owners of the Jackson ditch and its priorities owned them as tenants in common, and were consumers of the water thereby carried, and they organized a corporation called the Dry Creek Ditch Company, what is commonly known as a "Mutual Ditch Company," to which they conveyed the ditch and the water rights, the company issuing to the several owners capital stock representing ownership in the ditch and the quantity of water which they were entitled to use.

There were twenty-four shares of stock issued. Of these the defendant company, long after the water had been beneficially used, bought three and one fourth shares from Terry, Black and Alford, water consumers under the Jackson ditch, and stored the water thereby represented in its reservoir, and thence distributed it during the later irrigation season to its stockholders, who used it for irrigating lands belonging to them and lying under their ditch. It will be seen that the water was thus severed from the land on which it

was originally used, and applied for the purpose of irrigating other lands. The plaintiff charges that no priority was sold by the sale of ditch stock, and if it was, then such transfer and change of use have resulted in an enlarged use of water to plaintiff's injury.

In the first place, it is said that the Jackson ditch, its capital stock, and priority to the use of water thereby carried, are three separate and distinct things; the ditch belonging to the corporation, the priority to the water consumers, while the stock may be held by persons not using water. Upon this as a premise the argument is that the corporation cannot transfer a priority, only the water consumer may do this. The sale of ditch stock is not the sale of a priority. To transfer this the water consumer must also sell the land upon which the water has been used, or, if he retains the land and sells the water right to be applied on other lands, such right passes to the grantee, and the grantor no longer can irrigate the land retained by means of the water right thus conveyed to another. The conclusion drawn is that in the sale of ditch stock to this defendant no priority passed, and reliance is had on *Combs v. Agricultural Ditch Co.*, 17 Colo. 146.

The premise, as laid down, may be true in whole or in part; or it may be entirely false. A ditch company organized merely as a carrier of water to those owning the appropriation may, as a corporation, own the physical or tangible ditch. Its stock may be in the hands of A and B, and the consumers of water may be C and D, and the transfer of the capital stock of the company may carry only an interest in the ditch. But where, as is the case at bar, the water rights, and the ditch through which they are enjoyed, are owned by the same persons as tenants in common, and for their mutual convenience they organize a corporation and convey to it the ditch and water rights, and the corporation issues to the consumers its capital stock, which represents and stands for, not only the rights of the parties in the ditch, but, by a mutual arrangement, also represents the right to the use of water, or the priority right, then this stock (while not, of course, con-

stituting the ditch or priority to the use of water) does represent both the ditch and that priority, and a transfer of the stock operates as a transfer of both kinds of property. So that all of the plaintiff's argument that nothing was transferred by the purchase from water consumers of the capital stock of the ditch company, and all the distinctions sought to be drawn between ditch stock, the ditch, and the priority to the use of water, are wholly inapplicable to the facts of this case. There is nothing decided in the *Combs* case that is against this conclusion, and the facts of that case called for no ruling upon the question here raised.

Notwithstanding the decision of this court in *Strickler v. City of Colo. Springs*, 16 Colo. 61, that there may be a sale of a water right, separate from the land, and an application of the water to other lands, so long as the rights of others are not infringed, plaintiff persists in the contention that its conclusion is unsound. Much of the argument might be pertinent were the doctrine of that case an open question, but not only in this state but in all others in which the system of appropriation prevails, the same result has been reached where the question has been raised. With the conclusion reached in that case we are content. See, also, *Fabian v. Collins*, 2 Mont. 510, and *Frank v. Hicks*, 35 Pac. Rep. (Wyo.) 475.

The only question of importance, then, in this record is, have the transfer of the priority and the change of the place of use injuriously affected the later appropriator? If not, plaintiff may not be heard to complain; if so, it is entitled to relief. The finding of the trial court was that as to the one and three fourths shares of stock bought of Black and Terry, who were stockholders and consumers of water under the Jackson ditch, the transfer has not resulted in any injury to the plaintiff; but that as to the two shares bought of Alford, such transfer and subsequent use by defendant have resulted in an enlarged use of water above that made by the consumers under the Jackson ditch prior to the transfer.

As to the former part of the ruling, in which the court of

appeals concurs, we think the district court clearly right, and this disposes of the cross-errors assigned by the plaintiff.

With much force the plaintiff attacks the decision of the court of appeals reversing the second part of the finding, and strenuously insists that the evidence abundantly sustains the finding of the trial court as to the Alford stock. To a consideration of this proposition we now address ourselves.

In the opinion and findings of the learned district judge it is said that the water represented by the Alford stock had not been used for some time previous to its transfer,—at least, to the extent that it has since been used; that no lands lying under the canal of the company whose stock was sold had ceased to be irrigated, and that the demands upon the supply of water in the river were greater and were increased by reason of the transfer and the enlarged use of water therefrom. If the evidence sustains this finding, or if there is any legal and competent evidence upon which it can be justified, although there is a serious conflict in the evidence, and, in our view, its weight is against the finding,—it ought to be upheld under the general rule of this court so often announced.

Considering the important principle involved, the property interests of the litigants, and the respect due to findings of a trial court, we have closely scrutinized the evidence upon this point. The conclusion reached that the plaintiff was injured seems to have been predicated upon two separate facts : *first*, that the water represented by the Alford shares had not for some time previous to the transfer been used, at least, to the same extent as it was thereafter ; and, *second*, that after the transfer no lands ceased to be irrigated under the Jackson ditch; therefore the demands upon the supply of water from the river were greater, and have been increased by reason of the transfer.

The uncontroverted facts are that prior to 1880 when Alford bought the stock, the water had all been continuously used in irrigating land of its then owners. When he bought, his intention was to use a portion of the water on school lands, but being unable to lease them, such use was never had.

Therefore, after his purchase and up to the time he sold to the defendant, all this water was used, sometimes in irrigating land that he himself owned lying under the Jackson ditch, sometimes by his tenants, or by those who worked or paid the assessments levied upon the stock; and when not so used, through a mutual arrangement was employed by the other stockholders in irrigating their lands under the Jackson ditch. Alford testifies that he never intended to abandon his rights, and never did, and that there was no interruption in the use of the water as aforesaid. The evidence is uncontroverted that, in times of scarcity, there was not enough water in the Jackson ditch to irrigate all the lands of the stockholders lying under it, but that its decreed priority, to its full extent, and at all times when available, had been used by the several owners, and when one did not, for any reason, need all his *pro rata* share, the other tenants in common beneficially applied what was not so needed.

It is to be observed that, under these adjudications awarding priorities, the decreed priority attaches to the ditch, and a certain quantity of water is decreed to it, and no attempt is made to designate the person or persons who are the owners of the priority, or what proportion belongs to each; and, indeed, the statute contains no warrant for determining the ownership of the ditch or the relative rights of the water consumers thereunder. In so far as concerns the rights of junior appropriators who were parties to the proceeding, the quantity of water awarded to the Jackson ditch is *res adjudicata*. Its owners might, and in this case did, apportion the water among themselves. *White v. Highline Co.*, 22 Colo. 191. They could not waste it, or divert more than their necessities required; but junior appropriators are not concerned with the method of apportionment adopted by those entitled to its use, so long as the latter had a necessity for it, and actually used it, and diverted no more than the decreed priority. If one consumer did not need, or use, all that his stock entitled him to; or if, by sale of a portion of his lands, his necessity was less, or, as expressed by counsel, if he

owned more water than land, he might lawfully sell the excess of water, or lease it, or permit his cotenants to use it, before any subsequent appropriation attached thereto, and of this junior appropriators may not complain.

One tenant in common may preserve the entire estate held in common. This doctrine is applicable where the common estate is a water right, so long as the tenant in common has both the necessity for the use, and actually uses the water for a beneficial purpose. The extent to which the right may be preserved, of course, depends upon the amount so used, coupled with the necessity. *Meagher v. Hardenbrook*, 11 Mont. 385.

Under the conceded facts, the use of the water represented by the Alford stock previous to the transfer to the defendant was such as that no abandonment, or loss of the right, occurred. The fact that it was not at all times, and to its full extent, used by Alford himself, but that it was at such times used by lessees, or by his tenants in common, preserved intact the right to the full quantity represented by the shares held by him.

But the finding, in form a finding of fact, is that this transfer has resulted in an "enlarged" use. There is not a word of direct evidence that more water is now turned into the Jackson ditch from the river than before the transfer. We have seen that its decreed priority attaches to the ditch itself, and that if the quantity decreed is beneficially applied, it is immaterial to plaintiff, as a junior appropriator, whether it is upon the lands of the several owners in exactly their *pro rata* shares, or in accordance with some other method mutually satisfactory.

But the court seems to have concluded that an "enlarged" use necessarily resulted from the mere fact that practically the same number of acres of land lying under the Jackson ditch are now irrigated as before the transfer, and, in addition to this, the defendant with the purchased water right irrigates a large tract of land, how much the evidence fails to show. In other words, the court below, assuming it as a necessary

deduction from the fact that more land was irrigated after, than before, the transfer, held that thereby there was an enlarged use. An "enlarged" use may mean that more land is being irrigated with the same quantity of water than formerly was employed in irrigating fewer acres. It does not necessarily imply that a greater volume is required. It seems to us that if, as a matter of fact, a greater quantity of water is actually so used, the best evidence would be testimony that more water was now being diverted into the ditch. Certainly, evidence that more water is now turned into the head-gate of the Jackson ditch would be more satisfactory proof of injury to plaintiff than the inference to be drawn from the mere fact that more land was being irrigated. Suppose there had been no transfer of this stock, and the original stockholders had increased their acreage, would plaintiff necessarily, or at all, be injured if the aggregate quantity of water diverted into the Jackson ditch was no greater than before cultivating the additional land? Might not the same quantity be used, through more economical methods of spreading the water, or possibly by not so complete saturation? Suppose, again, that defendant had bought all the rights of priority attaching to the Jackson ditch, could it not change the place of use, and even apply the water to a 1,000 acres more land than the former owners irrigated, provided no greater amount of water was taken from the river than before the transfer? The only specific evidence is that no more water is now being diverted than before, and that is by no means overcome by an inference of enlarged use drawn from an increased acreage. In other words, the finding by the court that there was an enlarged use is not only not one of fact, but an unwarrantable conclusion or deduction from facts which are attended by no such consequences. To say the least, in the absence from this record of evidence as to other essential elements entering into the problem, it is impossible to determine from the evidence before the court that a greater quantity of water is now diverted through the Jackson ditch to irrigate the lands of the present stockholders than

was taken before the defendant acquired its stock; and if only the same quantity is diverted, plaintiff suffers no injury.

There is no other evidence than this relating to the nonuse of water by Alford himself, and as to the acreage now and heretofore irrigated, to show a larger diversion of water. True, in answer to hypothetical questions (not proper questions, because based in part upon no evidence in the case) certain opinions in the nature of legal conclusions were given by several witnesses to the effect that plaintiff was injured by the transfer, but we are to determine this from the facts, and not from opinions of witnesses. In any event, the evidence signally fails to show that since the transfer the Jackson ditch has diverted more than its decreed priority, or more than it did before the transfer, or that any greater demand upon the waters of the stream is made by the defendant than was previously made by Alford and his cotenants.

From the foregoing our conclusion is that the finding below that plaintiff has been injured has no substantial foundation in the facts of this case. The nonuse by Alford of all the water he was entitled to, when it is considered that he had no intention to waive any right, and that he and his cotenants did use all the water his shares represented, worked no abandonment of his rights. The mere fact that, since the transfer, a greater acreage has been irrigated by the decreed priority of the Jackson ditch than before, does not establish a greater diversion. Greater economy in use, or less thorough irrigation, or difference in soil as to absorbing quality, may account for that; especially when there is no direct evidence at all that more water has been diverted from the river into this ditch, and there is positive evidence that no greater volume has been diverted since the change of place of use. The evidence as to increased acreage is not, of itself, sufficient to establish that an enlarged use of water has been occasioned by the transfer.

The judgment of the court of appeals is affirmed, with instructions to remand the case with directions to the district court to affirm its judgment as to the Black and Terry stock,

and to reverse it as to the Alford shares, and if further proceedings be had, that they conform to this opinion.

*Affirmed.*