JAMES S. CLAGUE ET AL., APPELLEES, V. TRI-STATE LAND
COMPANY, APPELLANT.

FILED MAY 21, 1909.   No. 15,686.

1. **Pleading:** ADMISSIONS.  A statement in an answer that, if a con-
tract was executed by a corporation, it is void because *ultra vires*,
is an admission that the contract was made, notwithstanding a
general denial in another paragraph of said pleading.

2. **Waters:** IRRIGATION: CONTRACT: ENFORCEMENT.  A contract for the
use of water, made for a valuable consideration with a corporation
organized for the purpose of supplying water for irrigating land,
that did not when made contravene the laws or policy of the state
may, as between the parties or their successors in interest, be
enforced, subject to all reasonable regulations, provided that the
rights of other water users are not thereby unlawfully curtailed.

3. ——: ——: BREACH OF CONTRACT: LIABILITY.  If a corporation
engaged in the business of supplying individuals with water for
the irrigation of arid or semiarid lands unlawfully and arbitrarily
prevents the holder of one of its water contracts from using
water for the irrigation of a field of growing potatoes, it is liable
to the individual in damages.

4. ——: ——: ——: DAMAGES.  In such a case the measure of
damages is the value to plaintiff of the use of said right during
the time he is deprived thereof, and it is not error to instruct
the jury that the measure of plaintiffs' recovery "is the value of
the crop at the time the water was shut out of said canal, with
the right to irrigate it from that time on to the end of the sea-
son, less the value of the crop without the right to irrigate it
from that time until the end of the season."

5. **Appeal:** INSTRUCTIONS: HARMLESS ERROR.  If the court gives another
instruction less favorable to plaintiffs on the same subject, it is
error without prejudice to defendant, especially if it has requested
practically the same instruction.

6. ——: EVIDENCE.  In proving damages in such a case, considerable
latitude should be given in the introduction of evidence, and a
judgment will not be reversed because the court refused to strike
out an answer not entirely responsive to an interrogatory, and
to that extent not competent, where there is an abundance of other
competent evidence in the record to support the verdict, and the
only reasonable ground for contention upon the entire record is
the amount of the recovery.

APPEAL from the district court for Scott's Bluff county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*Wright & Wright* and *Wilcox & Halligan*, for appellant.

*Morrow & Morrow, contra.*

ROOT, J.

Action for damages because of the alleged unlawful interference with plaintiffs' use of water for irrigating their farm. Judgment for plaintiffs, and defendant appeals.

The facts in this case are incident to the reorganization of the Farmers Canal Company, the sale of its assets under a decree of foreclosure, and the conduct of the grantee of the purchaser at said sale. Many of the facts relating to the evolution of said enterprise are detailed in *Farmers Canal Co. v. Frank,* 72 Neb. 136, and reference is hereby made to said opinion.

The original corporation was conducted as a mutual concern. The stockholders contributed small sums of money and a good deal of labor to construct the canal. In the fall of 1890 individuals, not owners of, nor subscribers to, the stock of the corporation, desired to acquire control thereof for speculative purposes. The corporate stock and other obligations were then represented principally by receipts issued to those who had paid money or contributed materials or labor for the construction of the canal. The main canal had been completed a distance of about ten miles from the headgate and about one-fourth the width originally contemplated, and the stockholders were receiving and using water from the main canal to irrigate their lands. The promotors of the reorganization and all of the stockholders of the old corporation evolved a scheme whereby the latter were to be protected in their investments and the control of the corporation given to the former without the payment of money. In

pursuance of this plan, the old company executed contracts conveying in severalty to said stockholders perpetual, preferred and nonassessable water rights, which, if valid in all particulars, gave the grantees in said instrument each an absolute right in perpetuity to the use of a number of cubic inches a second of water for irrigating any land that might be served from said canal at any point along its path within 40 miles of the headgate thereof, without the right of the corporation to prorate the use of water in said canal among said grantees on the one part and the subsequent purchasers of water from the corporation on the other, and without liability on the part of the original stockholders to pay for maintenance of the canal in the future. There is some evidence tending to prove that the promotors agreed that those contracts should be issued by the reorganized, and not the original, corporation, but all parties interested knew that the original corporation had assumed to issue the contracts and acquiesced therein. By virtue of said arrangement Joel Jackson received one of said contracts granting him the right to thus use 120 square inches of such water flowing under a five-inch pressure, but not describing any land upon which it was to be used. The contract was recorded, and thereafter Jackson used water from said canal to irrigate land owned by him. Subsequently he sold said land and water right, and his grantee, in turn, sold and assigned the water contract separate from the land, and by *mesne* conveyances plaintiffs became the owners thereof. In the spring of 1906, after said purchase, plaintiff diverted the water from defendant's canal at a point about 14 miles from the headgate thereof, and had prepared to irrigate 40 acres of potatoes. In the latter part of July defendant commenced reconstructing its canal so as to irrigate an extensive tract of land not within the limits of the territory served by the ditch as constructed by the reorganized company. Meeting with determined opposition from the water users who had been receiving water out of the upper section of the canal, defendant built a

dam therein some distance above plaintiff's headgate, and cut the banks of the ditch below said obstruction. Plaintiffs could not secure water from any other source, and claim that their potatoes were seriously injured and that they were damaged thereby.

1. Independent of some questions of practice, defendant argues that the aforesaid contract was void and not within the chartered power of the corporation to make, because it purported to give the holder an unlawful preference in the use of water, and illegally sought to shoulder on other water users the entire cost of maintaining the canal, and, finally, that the use of water for irrigation is inseparably attached to land and cannot be conveyed separate therefrom. There is not a particle of evidence to show that defendant was under the necessity of, or that it attempted to, prorate the use of any water in its canal, nor that it had levied a maintenance tax which plaintiffs had refused to pay. Defendant arbitrarily shut off the water for its own convenience. We therefore do not determine the effect of those clauses in said conveyance.

Concerning the power of the Farmers Canal Company to convey the water right under consideration without reference to a specific tract of real estate, it may be said that the corporation had theretofore appropriated water and constructed its ditch with reference to the land now owned by plaintiffs, as well as that owned by Jackson when the contract was made with him. The corporation received from Jackson $20 and the use of a team for a year in consideration of said agreement. The corporation was organized, and had appropriated the water prior to the enactment of the law of 1889, and had executed said contract before the passage of the present irrigation law in 1895. At the time Jackson surrendered his claims against, and interest in, the corporation for said contract, the state had not announced its policy to attach the use of water appropriated for irrigation purposes to designated tracts of land, and it is not claiming in the instant

case that the use of its water is being misapplied by plaintiffs, nor are any other water users insisting that their rights are in any manner infringed by the use aforesaid. In irrigating said land, plaintiffs were applying the water to the purposes for which the corporation had appropriated it, and as between the parties hereto, upon the facts before us, we are of opinion that plaintiffs acted within their legal rights. *Strickler v. City of Colorado Springs*, 16 Colo. 61; *Oppenlander v. Left Hand Ditch Co.*, 18 Colo. 142; *Cache La Poudre Irrigating Co. v. Larimer & Weld Reservoir Co.*, 25 Colo. 144; *Middle Creek Ditch Co. v. Henry*, 15 Mont. 558; *Hall v. Blackman*, 8 Idaho, 272; *Johnston v. Little Horse Creek Irrigating Co.*, 13 Wyo. 208.

2. The court instructed the jury that the measure of plaintiffs' damage was "the value of the crop at the time the water was shut out of said canal with the right to irrigate it from that time on to the end of the season, less the value of the crop without the right to irrigate it from that time until the end of the season." Defendant requested an instruction that such measure was "the difference between the value of the crops growing on plaintiffs' land as set out in the petition immediately before and immediately after the injury complained of." The instruction requested would be proper if the injury had been inflicted by one act or at one time so that a comparison of the crop just before and immediately subsequent to the transaction would demonstrate the extent of the injury and the amount of the damage. In the instant case the injury resulted from withholding the water for several consecutive weeks. In the meantime the crops had made some progress. If the comparison were made immediately after all injury had been inflicted, defendant would have the benefit of the increased growth and value of the potatoes which had accrued notwithstanding the handicap imposed by cutting off the water. If the application were made immediately before and immediately subsequent to the damming of the canal, then a just estimate could not

be made without a consideration of the result of the continued deprivation of water during the growing season. Plaintiffs were damaged to the extent of the value to them of the use of the water during the growing season for their crop, and the instruction given fairly presented that principle to the jury.

In the sixth instruction given by the court on its own motion the jurors were informed that the plaintiffs' damages would be "the difference between the fair market value of the growing crop in its condition at or just before it was damaged by reason of defendant's failure and neglect to carry and deliver water and its fair market value immediately after the damage was done." Defendant argues that this instruction is in conflict with the second one given by the court. In so far as it conflicts, it is to defendant's advantage. The first one given more nearly approximates a proper measure of recovery, and receives our approval under the facts in this case. If the jury followed either, defendant ought not to complain.

3. Defendant insists that the court erred in instructing the jury that the execution of the contract was admitted. Evidently counsel have overlooked the allegations in the fourth paragraph of their answer that, "if said Farmers Canal Company issued the water contracts as set out in plaintiffs' amended petition, it acted *ultra vires,* * * * and said alleged contracts were issued without consideration." Thereby defendant admitted the execution of the contracts. *Dinsmore & Co. v. Stimbert,* 12 Neb. 433; *Home Fire Ins. Co. v. Johansen,* 59 Neb. 349.

4. Complaint is made concerning the admission of evidence as to the extent of plaintiffs' damage. Witnesses were permitted to testify to what in their judgment would have been the yield of potatoes if the land had been irrigated; also, to state the actual yield and the market value of potatoes in the fall; also, to say what the potatoes were worth at the time the water was shut off, but with the right to continue the use of such water during the growing season. The witness Foreman qualified as an expert,

and was asked concerning the value of the potatoes at the time the water was shut off, and stated: "All the conditions being favorable for the crop from that on, I should say that the crop would bring $100 an acre." The court refused to strike this answer out. Plaintiffs' counsel then asked the witness to give his judgment based on the hypothesis that the crop could be irrigated, but excluding the further assumption of favorable conditions, whereupon counsel for defendant objected that the witness had answered such a question, and the objection was sustained. The answer was not strictly responsive to the question, and the assumption of continued favorable conditions was not the proper one upon which to predicate an opinion as to the value of the crop on the 1st of August. *Pribbeno v. Chicago, B. & Q. R. Co.*, 81 Neb. 657; *Morse v. Chicago, B. & Q. R. Co.*, 81 Neb. 745. In view of the position assumed by counsel that the answer given to the first question was an answer to the subsequent one, which clearly called for a different and proper answer, and because there was an abundance of other competent evidence to sustain the verdict returned, the error is without prejudice.

On the entire record we find that plaintiffs should prevail; that the only room for legitimate contention was as to the amount of the verdict. The court gave each party a wide latitude in making proof. No serious errors were committed, justice has been done, and the judgment of the district court is

AFFIRMED.