Thomson, J.,
delivered the opinion of the court.
In the year 1883 Mr. Craig and Mr. Johnson were the owners of a ditch taking its supply of water from the North Fork of the South Arkansas river, in Chaffee county. Mr. Johnson afterwards abandoned the land upon which he used the water, and it reverted to the United States, leaving Mr. Craig in the sole possession of the ditch. Craig’s title was purchased by W. H. Allen. In 1888 D. P; Owen, Samuel Groover, Wesley King, B. J. King, Wilford King and George Curtis, occupants of land which could be irrigated from the ditch, in pursuance of an agreement with Mr. Allen, enlarged the ditch, and received interests therein as follows: Owen one fifth, Groover one fifth, Curtis one fifth, and the three *438 Kings one fifth, or one fifteenth each, the remaining one fifth being retained by Allen. The ditch after being enlarged was called the “ Hoosier Ditch.” On March 7,1889, a receiver’s duplicate receipt was issued to Mr. Allen for his land, and on the 27th day of August, 1889, receiver’s receipts were issued to the three Kings for the tracts occupied by them respectively. On March 18, 1889, Allen executed a deed of trust, conveying his land and water rights to C. N. Craig, trustee, to secure his promissory note to Crippen, Lawrence & Co., for $67.50; and on the 3d day of September, 1889, each of the three Kings executed a deed of trust, conveying his land and water rights to the same trustee, to secure his promissory note to the same firm for $105. Default was made by each of the parties in the payment of his note; and his land was sold in pursuance of his deed of trust, Henry J. Putnam, the plaintiff in error, being the purchaser. The deed to him for the Allen tract was executed November 15, 1890, the deeds for the tracts of Wilford E. and B. J. King on December 16,1891, and the deed for the Wesley King tract on November 23, 1892. On the 18th of February, 1893, the defendant in error, Kate Finley, became the owner of the land of D. P. Owen; and the Rollins Investment Company seems to have succeeded to the title of Groover, but at what time does not appear. In 1890, in a proceeding instituted in the district court of Chaffee county, in pursuance of section 1766 of the General Statutes, a decree was rendered determining and establishing the relative priority of right by appropriation of water of the Hoosier ditch, as between it and other ditches in the same water district, and the amount of water to which, by such appropriation, it was entitled. No part of the expense of the decree was borne by Allen and the Kings, or either of them, and it may be inferred that none of them was present at the hearing. Each of the three Kings used water from the ditch to irrigate his land, from the time when he acquired his water interest, down to, and including, the year immediately preceding that in which his title was divested, the last year of *439 use of water by any of them being 1891. Allen used the water every year from 1885 to and including 1889. After 1889 neither the Kings, nor any person or persons claiming under them, contributed towards maintaining the ditch, but it does not appear that they were ever requested to do so. During 1891, 1892 and 1893, the plaintiff made continuous effort to rent his land; but on accouut of the declarations of Curtis that it had no water, he failed, until 1893, when he procured a tenant for a portion of it. The crop of this tenant, by reason of the acts of Curtis in depriving him of water, was a failure.
The complaint set forth the respective rights of Allen and the Kings in the ditch, and in the water flowing through it, the conveyance to the plaintiff Putnam of their lands, and their ditch interests and water rights, and averred that during the irrigating season of 1893 his tenant was violently prevented from taking water from the ditch by the defendants, who threatened a continuance of their acts, so that the plaintiff was and would be unable to raise a crop on his land. The prayer was for a decree establishing the plaintiff’s right to an interest of two fifths in the ditch, and in the water which it carried, and for an injunction restraining the defendants from depriving him of the use of the water. The answer of Curtis and Finley, after denying the plaintiff’s title, set up the decree in the priority proceeding, averring that in that proceeding the same cause of action involved in this suit was adjudicated and determined by awarding to the defendants the entire ditch and all its water, and alleging that whatever rights the plaintiff or his grantors may have had were lost by abandonment. The Rollins- Investment Company disclaimed, averring that it had conveyed its entire interest to Caroline Lovejoy. The plaintiff’s replication admitted the conveyance, and it was thereupon stipulated that neither the company nor its grantee had done any act in denial of the plaintiff’s rights. Upon the hearing the court found the issues against the plaintiff, and dismissed *440 his bill. He has prosecuted error to this court from the judgment rendered.
None of the defendants is represented here. A brief has been filed by John S.'Mosby, Jr., Esq., as attorney for one J. Trefethan, who is said to have succeeded to the interest of Owen pending the suit. The record shows Finley to be the owner of the Owen title. No mention is anywhere made of Trefethan, and he is a stranger to the case; but Mr. Mosby’s argument is the only one in opposition to the claim of the plaintiff that has been presented, and we shall regard him as appearing amicus curice, and give his argument due consideration. There is no material conflict in the evidence, and the question is whether upon the undisputed facts the judgment is right.
The answer sets up the former decree as an adjudication of the questions involved in this suit, and by which the plaintiff is barred. In other words, it is claimed that by reason of that decree this cause of action is res adjudicata. The further defense is that whatever rights the plaintiff or his grantors may have had have been extinguished by abandonment. Mr. Mosby does not insist that the decree determined the rights of the owners of the Hoosier ditch as among themselves, although he refuses to concede that it did not, but he urges the failure of the plaintiff’s grantors to appear and claim their rights in that proceeding as a fact tending to prove an abandonment. That decree was not and could not be an adjudication of any right or claim of the plaintiff’s grantors, as between them and the other owners of the same ditch. It does not purport to determine what persons owned the ditch, or what their respective interests in it, or the water which it carried, were; but if the court had, in that proceeding, undertaken to adjust the rights and proportionate interests of the several claimants of the ditch, as against each other, its judgment would have been to that extent a nullity. The proceeding in which the decree was rendered was a special one, provided by the statute for the sole purpose of ascertaining and adjudicating the *441 priorities of right to the use of water between the several ditches, canals and reservoirs in the same water district. The statute invests the court with jurisdiction to establish the rank of the several ditches with relation to each other, based upon the different dates of appropriation of water, the quantity appropriated, and the means employed to utilize it; and to award to each the priority to which it may be entitled; but it does not authorize inquiry into the relative rights of coclaimants in the same ditch, or any adjustment of their disputes amongst themselves.
The nonappearanee of the plaintiff’s grantors in the proceeding is not evidence of an abandonment of any right which they had previously possessed. The statute requires notice to be given to all persons interested as owners in any ditch, canal or reservoir, to appear and file a statement of claim under oath, showing the ditch, canal or reservoir, or two or more such, in which he, she or they claim an interest. Mr. Mosby refers us to this provision and argues from it that the failure of the parties to appear in obedience to the requirements of the notice indicates their intention to abandon their claims. We are unable to appreciate his logic. If all the owners of the ditch had absented themselves from the adjudication, and there had been no statement filed showing their ditch, no evidence would have been heard in their behalf, and no priority would have been awarded to it; and if the other ditches to which priorities were given exhausted all the available water, theirs would have been dry and useless ; but their rights in the ditch and in any water which it might obtain, as between themselves, would not have been affected. But the statute further provides that the statement required may be made by any one of the owners, for and in behalf of a}l; and accordingly we find that the statement in behalf of the Hoosier ditch was made by the defendant Curtis, in which he set forth that it was owned in common by himself one fifth, two others one fifth each, and others two fifths. Every share in the ditch was represented in his statement, and the court seems to have regarded it as suffi *442 cient for the purposes of the adjudication. The rights of the ditch were preserved in the decree, and the fact that the grantors of the plaintiff were not personally present has no significance, and justifies no inference whatever, unfavorable to them.
Whether an act of a party constitutes an abandonment of property previously occupied by him depends entirely upon the intention with which it is done. . An abandonment of property held by possessory title takes place instantly when the occupant deserts it without an intention of ever reclaiming it for himself, and careless of what may thereafter become of it. A single act may be of such character, and done in such manner, and under such circumstances, that an intention to abandon may be inferred from it. But mere absence from, and nonuser of, the property, do not prove an intention to abandon, although conduct of that kind may continue unexplained for such length of time as not to be consistent with any other hypothesis. Derry v. Ross, 5 Colo. 295 ; Sieber v. Frink, 7 Colo. 148 ; Richardson v. McNulty, 24 Cal. 339 ; Judson v. Malloy, 40 Cal. 299 ; Mallett v. Uncle Sam Mining Co., 1 Nev. 186.
It devolves upon the party alleging an abandonment, and setting up a claim in virtue of it, to establish the facts from which it may be deduced. Oreamuno v. Uncle Sam Mining Co., 1 Nev. 215.
We shall now briefly examine the evidence which is specially relied upon to prove that the water rights in question were abandoned. First. Curtis and the Kings paid no part of the expenses of the proceeding in which the ditch priorities were adjudicated. Whether this fact would, under any circumstances, even have a tendency towards proving an abandonment, we shall not inquire. There is no evidence that there was any expense in the proceeding chargeable against the Hoosier ditch. By the terms of the statute, all the expenses are payable by the county or counties in which the water district lies, except the fees of witnesses, which must be paid by the parties calling them. It does not ap *443 pear that there was any testimony on behalf of the Hoosier ditch, unless it might have been that of the owners who were present. But, aside from these considerations, the fact that the Kings continued to use the water for the purposes of irrigation after the rendition of the decree is a conclusive answer to the charge of abandonment made against them on account of their alleged neglect of payment. Second. Since 1889 neither the plaintiff nor his grantors contributed towards the maintenance of the ditch. The record does not show either that there was any necessity for such contribution, or that any of them was ever requested to contribute for-that purpose. If there was such necessity, and any coowner upon proper demand refused to contribute his proportion, the owner or owners paying his part of the expense, or doing his share of the work, would not have been without a remedy, and in a proper proceeding could have made themselves whole ; but an indebtedness by him for his share of the work would not divest him of his interest, or, unconnected with any other fact or circumstance, be evidence of an intention to abandon it. Third. The plaintiff’s grantors removed from their land at different times after 1889, and before 1893, and after removal never asserted any right in the land or the ditch; and the plaintiff, until 1893, made no attempt to use' the water. These facts, when considered in connection with concurrent events, are not even suggestive of difficulty. The title of Allen and the Kings in the land and ditch rights passed to the plaintiff,- — Allen’s in 1890, Wilford E. and B. J. King’s in 1891, and Wesley King’s in 1892. Each claimed and used his rights in the water during the years preceding the one in which his property passed from his ownership and possession. There was no abandonment by him down to the time when the plaintiff succeeded to his title. The plaintiff after becoming the owner made diligent and continuous effort to rent the land, but was unsuccessful until 1893, when he leased a portion of it. The evidence tends to show that the defendant Curtis was responsible for his failure to obtain *444 tenants, and the one he did obtain lost his crop because Curtis and Finley cut off his supply of water.
In the entire record there is nothing to indicate an intention of abandonment, either on the part of the plaintiff, or those to whose title he succeeded. Indeed, the opposite intention affirmatively and abundantly appears. Upon the case made by this record the plaintiff was entitled to the relief prayed, and the court erred in denying it. The judgment must be reversed.

Reversed.