[No. 5494.]

ROLLINS V. FEARNLEY.

1. **Corporations—Annual License Tax**—A corporation may effectually pay the annual license tax after non-payment is pleaded; and, presenting evidence of the payment, preserves its standing in the pending suit.—(323)

2. **Water Rights — Adjudication of Priorities — Rights of Consuming inter se Not Affected**—It is not contemplated by the statute that the statutory decree shall settle the ownership of the various ditches, or the rights of the consumers, as between themselves; and so far as a decree in such a proceeding assumes to do this, it is ineffectual.—(323, 325)

3. **General Finding—Effect**—A general finding in effect declares every fact necessary to support it.—(326)

4. **Appeal—What May Be Assigned to Error**—The plaintiff will not be heard to complain of the dismissal of a cross-complaint interposed by the defendant.—(326)

*Appeal from Arapahoe District Court* — Hon. A. H. DeFRANCE, Judge.

Mr. WILLIAM YOUNG, for appellant.

Mr. GEO. F. DUNKLEE, and Mr. O. E. JACKSON, for appellee.

This is an action for equitable relief, commenced by the plaintiff, Robert P. Rollins, appellant here, in the district court of Arapahoe county in the summer of 1903, to enjoin the defendants, Joshua Fearnley, The Fearnley Investment and Real Estate Company, and Charles Sandell, appellees here, from diverting water for irrigation purposes from and through what is known as the J. D. Ward Ditch No. 2. The plain-

tiff claims by virtue of a decree, theretofore obtained in the district court of Douglas county, for water district No. 8, under the statute, upon constructive service merely, providing for the adjudication of water rights in water districts, to be the sole owner of said J. D. Ward Ditch No. 2, and the only person entitled to take water therefrom for irrigation; and that he is entitled to use seven and five hundredths cubic feet of water per second of time through it, that being its full carrying capacity. Excepting formal matters, the allegations of the complaint are put in issue. By way of further answer and cross-complaint, defendants set up in substance that the ditch in question was constructed in the year 1881, by one Belle M. Sanderson, upon, through and across lands then owned by her, she being the immediate grantor of Joshua Fearnley and another, title to which said lands, with all appurtenant ditch and water rights, ultimately vested in the Fearnley Investment and Real Estate Company, one of the other defendants. The interest of the defendant, Charles Sandell, comes by way of lease-hold rights. Further, that said ditch and a portion of the water flowing through it has been constantly and continuously used by said Sanderson and these defendants, or some one or more of them, for the irrigation of said lands, since said year 1881. That one Jasper D. Ward, in the year 1882, being then and there the owner of certain other lands adjacent or near to those above mentioned, and now in possession of and owned by plaintiff herein, in order to secure any surplus water that might be obtained through said ditch, entered into a parol agreement with said Sanderson, who was then, as is claimed, the sole constructor, owner and user of the said J. D. Ward Ditch No. 2, then known and designated as the Sanderson Ditch, whereby the said Ward was given the privilege of

reconstructing, enlarging and maintaining said ditch at his own expense, and extending the same from its then terminus to his property, in consideration that said Sanderson· was at all times to have, free of charge, the prior right to the use of the necessary water for the cultivation of the land theretofore irrigated by her through said ditch, said Ward to have the use only of the surplus water supply therefrom. Defendants also allege, in support of their said further answer and cross-bill, that said Ward, in pursuance of said agreement, and during the year last aforesaid, did construct, enlarge and extend said ditch, and that thereafter and until on, to wit, October 14th, 1899, when he sold and conveyed his said lands to the plaintiff, complied fully with the terms of said oral agreement. That said Sanderson and her grantees, since said ditch enlargement and extension, have continued to use the water from said ditch upon the lands between it and the gulch from which the water supply is taken, just as was done prior to its said extension and enlargement. That irrigation had been thus continuously carried on by said Sanderson and her grantees, upon said lands under said agreement, up to the time of the granting of the injunction herein. That the plaintiff had full and actual notice of the right the defendants claimed to have in and to said ditch, and knew that said defendants and their grantors were, at said time, and for a long time prior thereto had been, exercising acts of ownership over said ditch, and flowing water therein for the purpose of irrigating their lands thereunder. Yet, that said plaintiff, in the face of said knowledge, deliberately, fraudulently and designedly, without any actual notice or attempt at actual notice to the defendants, or any or either of them, but secretly, and upon constructive notice

only, did obtain from the district court of Douglas county the decree upon which they rely herein for equitable relief, and did then and there intentionally and willfully withhold and conceal the aforesaid facts, touching the rights of the defendants in and to said ditch, and to the use of water therein, from the court granting said decree. The defendants, upon their said further answer and cross-complaint, prayed judgment that the said decree and award to the plaintiff be annulled, set aside and for naught held, and also for affirmative relief adjudicating the respective rights of the parties to the use of water through said J. D. Ward Ditch No. 2, and of owner-ship therein. A motion by plaintiff to strike the further answer and cross-complaint, and then a special demurrer thereto, were in turn overruled by the court. Issue was joined on the facts set forth in said cross-complaint by plaintiff's reply thereto, except only as to formal matters. For an additional defense to the cross-complaint, the plaintiff further pleads, in reply, the fact that the defendant company had failed to pay to the state the annual license tax required by law, and had procured no certificate of authority to carry on business here.

Upon the issues so tendered, trial was had before the court without a jury, and at the conclusion thereof, plaintiff's complaint, and the cross-bill as well, were dismissed. The findings were to the effect that plaintiff had shown no equities, and was not entitled to injunctive relief. The cross-bill was dismissed for the reason that the testimony showed that all of the parties necessary to a full, final and complete adjudication, as to who were in fact the lawful users of water through the ditch in question, and the rightful owners thereof, were not before the court, and the parties were remanded to their proper and appropriate remedy to have all those questions de-

termined. To review said action of the court, the plaintiff brings this case here on appeal.

Mr. JUSTICE BAILEY delivered the opinion of the court:

Upon the question of the payment of the annual state license tax, the proof shows that, prior to the hearing, the defendant company paid the same, and submitted in evidence a properly authenticated certificate to that end. This disposes of the contention in that behalf. That this payment was in time, is supported by the opinion of this court in the case of *The Ohio M. & M. Company v. Rufus C. Elder et al.,* reported in 99 Pac., at page 42, where leave was given to the plaintiff in error, even at that late day, to pay said tax and produce the proper proof thereof, and thus avoid a dismissal of the writ of error on that ground. The statute seems to indicate by its very terms that such course is admissible, because it provided expressly that, *until said tax is paid,* a defaulting company may neither maintain nor defend a suit, thereby implying that it may do either, whenever such disqualification is removed. Under the facts here disclosed, this defense was therefore not available to the plaintiff against said cross-complaint, after a compliance by the defendant company with the requirements of the law.

On the main question, assuming the decree relied upon by the plaintiff, in so far as it attempts to adjudicate the priority of the right of the J. D. Ward Ditch No. 2, under the special statutory proceeding, as between it and other ditches taking water from the same source, is valid, though we do not expressly so decide, still that decree is in no sense *res adjudicata* as between the rights of the several claimants to the ownership of the ditch itself, and of their respective rights to the use of water through it. In

the statutory proceeding it is not contemplated that the ownership of the ditches or of the rights of the various users, as between themselves, of water through them are to be determined. Such a decree furnishes no basis for injunctive relief by one claimant to the use of water through a given ditch as against another claimant with equally good and possibly superior rights therein. In so far as this decree purports to settle and fix relative rights of individual users and consumers of water through said ditch, it is ineffectual. Manifestly so, where no actual notice was given to other claimants that an attempt would be made to obtain a decree of that character. The statutory proceedings in question were and are not intended for that purpose, but simply to adjudicate the priorities of right as between the several ditches of a district drawing water from a common source. It may well be doubted, even where parties submit themselves to the jurisdiction of the court in such special proceedings, whether their respective conflicting rights to the use of water through a specified ditch could then be lawfully adjudged, such course not being within the purview of the law.

This doctrine has abundant support in the decisions of this court and of the court of appeals. In *Oppenlander v. Left Hand Ditch Company*, 18 Colo. 147, where the direct contention was made that such an adjudication was *res adjudicata* as between the several claimants as to the right to the use of water through the same ditch, this announcement was made:

"In respect to this claim, it may be said that decrees rendered under the acts of 1879 and 1881, determining the priorities and the amount of the appropriations of the several ditches in an irrigation district, are not intended to designate the person or

persons entitled to the use of the water thus appropriated. Such a decree is not *res judicata* as to the party or parties entitled to the control of a particular ditch or to the use of water conveyed through the same, but only as to the priority and amount of appropriation of such ditch."

The cases of *Evans v. Swan et al.*, 38 Colo. 92, and *O'Neil v. Fort Lyon Canal Co* 39 Colo. 487, are to the same effect.

In *Putnam v. Curtis et al.*, 7th Court of Appeals, at page 440, having reference to a like contention, it was said:

"The answer sets up the former decree as an adjudication of the questions involved in this suit, and by which the plaintiff was barred. In other words, it is claimed that, by reason of that decree, this cause of action is *res adjudicata*. That decree was not and could not be an adjudication of any right or claim of the plaintiff's grantors, as between them and the other owners of the same ditch. It does not purport to determine what persons owned the ditch, or what their respective interests in it, or the water which it carried, were; but if the court had, in that proceeding, undertaken to adjust the rights and proportionate interests of the several claimants of the ditch, as against each other, its judgment would have been to that extent a nullity. The proceeding in which the decree was rendered was a special one, provided by the statute for the sole purpose of ascertaining and adjudicating the priorities of right to the use of water between the several ditches, canals and reservoirs in the same water district. The statute invests the court with jurisdiction to establish the rank of the several ditches with relation to each other, based upon the different dates of appropriation of water, the quantity appropriated, and the means employed to utilize it; and to award to each

the priority to which it may be entitled; but it does not authorize inquiry into the relative rights of co-claimants in the same ditch, or any adjustment of their disputes amongst themselves.''

Upon the hearing, the trial judge, at the conclusion of the testimony, found that the equities of the case, instead of being with the plaintiff, were with the defendants. This was and is in effect a finding that the plaintiffs must have had knowledge of the claimed rights of defendants, and their grantors, in and to the ditch in question, and to the use of water for irrigation purposes through it. This conclusion finds ample support in the testimony, and is undoubtedly correct. The court's determination of the matter means also that plaintiff, with full information of the rights of the defendants, sought and obtained without notice, or attempt at notice, to them, other than of a constructive character, a decree of court adjudging him to be the sole owner of the ditch in question, with the exclusive right to the use of water through it for irrigation. Thus equipped, he presents himself in a court of equity, and asks injunctive relief against those upon whom he has perpetrated this wrong. The judge below denied this relief, and promptly dismissed plaintiff's complaint as being without equity, and such action, upon the facts here disclosed was right and meets our unqualified approval.

The only other alleged error which deserves notice is that the court dismissed the cross-complaint without determining the rights of the various parties claiming an interest in, and the right to the use of water through, said ditch. Had the defendants assigned cross-error on such action of the court, a question of some difficulty might be presented. But since the action of the court in that particular was the very thing which the plaintiff, from the moment the

cross-complaint was filed, and constantly thereafter, urged the court to take, he at least ought not to be heard to complain. It would indeed present a unique proposition had the court, on plaintiff's motion, stricken the cross-bill, if he were permitted now to urge such action as erroneous. The situation is not greatly different in the present state of the record. When, during the progress of the trial, the fact developed that all of the parties necessary and essential to a complete determination of the controversy were not before the court, and no effort was then made by any one already there to have such other parties brought in, we are not prepared to say that the court might not, with entire propriety, dismiss the proceedings. In any event, the case should not be reversed on this ground at the behest of the plaintiff. All matters affecting his rights, as alleged and set forth in his complaint, were correctly determined by the trial court, and as he alone is here complaining, the judgment will be affirmed, leaving the parties to their appropriate remedy for an adjudication, among themselves, relative to the ownership of said ditch and their respective rights to the use of water therein.           *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE WHITE concur.