Decided December 16, A. D. 1912. Rehearing denied January 13, A. D. 1913.

---

[No. 3543.]

## CENTRAL TRUST CO. v. CULVER.

1. APPEALS—*Findings on Conflicting Evidence*, will not be disturbed if there be sufficient in the record to support them.

2. —— *Presumptions.* Where the cause is tried without a jury it will be presumed that evidence admissible only for a particular purpose was considered by the court for such purpose only; and that the court eliminated from consideration testimony improperly admitted.

3. —— *Harmless Error.* The improper admission of evidence upon an issue which is found for the party complaining of such admission is harmless.

4. —— *Cross Errors.* In the absence of cross errors assigned by appellee, errors prejudicial to him only will not be considered.

5. WATER RIGHT—*Abandonment of*, is a question of fact. Both the act and intent must be shown.

The burden of proof is upon the one asserting abandonment.

Even a right awarded by the general decree adjudicating priorities for the water district may be lost by subsequent non-user.

6. —— *Adjudication of Priorities—Jurisdiction of the Court.* In the statutory proceeding for the adjudication of priorities the court has no authority to determine property rights in the ditches, or who is entitled to the use of water from any ditch.

7. ESTOPPEL—*By Record.* Nothing is gained or lost by either party to an action which is voluntarily discontinued. The pleadings in such action cannot be used to establish an estoppel, where the statements thereof produce no act or change in situation by the parties seeking to establish the estoppel.

As to real property the doctrine of estoppel is not liberally applied to sworn pleadings, or the testimony of a party, where there is no showing by the record that the party invoking the estoppel has thereby been injured or embarrassed in his property rights.

8. —— *By Conduct.* One who in the general adjudication of priorities to the use of water, in the water district, gives testimony that a party named has for a time mentioned, before that, continuously applied the waters of a certain ditch to beneficial uses, should not be permitted to change his position, and testify or claim that prior to the decree in such proceedings the person in question had abandoned the use of the same volume of water.

9. EVIDENCE—*Pleadings in Former Action.* Where the plaintiff in an action which was discontinued is a witness in a subsequent cause, the complaint in the first action is admissible upon the question of his veracity.

*Appeal from Boulder District Court.* HON. HARRY P. GAMBLE, Judge.

Mr. JOHN H. DENISON, for appellant.

Mr. JOHN A. RUSH, for appellee.

HURLBUT, J.

This action was begun by appellee (plaintiff below) against appellant (defendant) to establish title to certain water rights and ditches claimed by plaintiff, and

to enjoin defendant from interfering with plaintiff's use thereof. Defendant's answer denies plaintiff's claim and alleges a prior right to, and ownership in, the water rights and ditches in question. The case rests largely upon facts which were sharply contested at the trial. Whichever way the court may have found the facts, there appears to be ample evidence to have supported the findings. The court found in favor of plaintiff and entered a decree accordingly, and unless the record discloses some prejudicial error in the proceedings below we are bound thereby, according to the well settled practice of this court that a judgment will not be disturbed which is founded on controverted facts if there be sufficient evidence to support it.

Appellant's entire title, if it has any, to the water rights and ditches in controversy depends upon the title previously held by W. R. Blore and wife. What is known as the W. R. Blore No. 2 ditch, and its alleged abandonment, appears to be the storm center of this suit. The court found, and the evidence tended to show (1) that no water had ever passed through Blore No. 2 ditch after 1867; (2) that the water rights decreed to Blore No. 2 ditch in 1883, as well as the ditch itself, were owned and used by Blore at the time that decree was rendered, but had been wholly lost and abandoned since that time, and that neither plaintiff nor defendant had any right or interest therein; (3) that plaintiff had established her ownership in the Culver and Mahoney ditch, which had a priority of April 15, 1867, and was the oldest priority on the Little Thompson creek in water district No. 4, and had at all times applied the waters decreed thereto to irrigate her lands and to other beneficial uses; (4) that defendant had no right or interest in the said Culver and Mahoney ditch; (5) and that no change in point of diversion of the water decreed to Blore No. 2 ditch had ever

been made, and neither defendant nor its predecessor or representatives had ever used the waters decreed thereto in or through any other ditch or ditches. The court having so found, a decree for plaintiff was inevitable. All the findings of facts by the court were based upon conflicting evidence. With courteous persistence counsel for appellant ably and forcefully presses his contention that the record fails to disclose sufficient evidence to support the decree. From a painstaking examination of the record we are unable to reach that conclusion. Even if Carey Culver's testimony were eliminated from the record, we still think there would remain sufficient evidence to support the findings of the trial court upon the disputed facts.

The real crux of this contest appears to be the issue of abandonment as to Blore No. 2 ditch. Considerable evidence was adduced on this issue. It needs no citation of authority to support the statement that abandonment is a question of fact to be determined by the trial judge or jury as the case may be, and, to constitute abandonment, both act and intention must be shown. Much evidence was also received relative to other ditches and water rights aside from the Blore No. 2 ditch, namely: "Culver and Mahoney" ditch, Blore No. 1 ditch, Supply ditch, and Supply Lateral ditch; all of which were subsequent priorities to Blore No. 2 ditch; likewise, Blore No. 1 ditch, Supply ditch, and Supply Lateral ditch, were subsequent priorities to "Culver and Mahoney" ditch. Defendant does not contend that any water was conveyed through Blore No. 2 ditch after 1867, but does strenuously urge that its grantors exercised and used the water rights granted to that ditch by conveying the water through Blore No. 1, Supply, and Supply Lateral ditches, and by so doing clearly negatived any intention on its part to abandon the water and water rights granted there-

to. The finding of the court, however, was against it on this contention as above shown. We agree with defendant that the rule is well settled that on the issue of abandonment the burden of proving the same is on the one asserting it.—*Putnam v. Curtis,* 7 Colo. App., 437. The law indulges in no presumption that a valuable right shown to have once existed has been abandoned by its possessor. It is not the question here whether or not we think, upon reading the evidence, the trial court should have found the issue of abandonment in favor of appellant, but rather, does the record show sufficient evidence to support the court's findings upon that issue? We have decided it does.

Appellant further complains that the admission by the court, over its objection, of certain evidence relative to acts, sayings and doings of appellee and her predecessors, concerning abandonment of Blore No. 2 ditch, etc., prior to the decree of 1883, and the admission in evidence of certain deeds offered by plaintiff, was prejudicial error, because the decree conclusively established non-abandonment of the ditch or water rights by defendant at the time it was rendered. It may be conceded that the decree of 1883 is conclusive as to the amount of water the several ditches mentioned were entitled to and the date of their respective priorities as fixed by the decree, and that at the time it was rendered there was no abandonment of the water rights decreed to any of such ditches. However, the supreme court has held in *Alamosa Creek Canal Co. v. Nelson,* 42 Colo., 140, that under the issue of abandonment if there be sufficient legal evidence tending to establish non-user subsequent to the decree, then evidence of non-user and similar acts of the owner prior to the decree is admissible for the purpose of showing his intent thereafter in not using what was awarded to him by the decree. The evidence objected to was ad-

missible for the purpose of showing intent only, and, the case being tried to the court without a jury, it will be presumed that the court considered it only for the purpose for which it was admissible; and further, the deeds from Blore and his grantees to plaintiff, admitted against defendant's objections, were also properly admitted in evidence under plaintiff's claim that the same conveyed to him the water rights in issue, and that he was the owner thereof, and that such ownership could not be determined by the decree of 1883. In the instant case the court found, "That at the time of the granting of the water decrees in 1883, W. R. Blore was the owner of the ditch known as the W. R. Blore Ditch No. 2, and entitled to the water thereto decreed," but it also found "that ever since the granting of the decree in the year 1883 there has been no water run through W. R. Blore ditch No. 2, nor has the point of diversion been changed, nor the water at that time decreed been used through any other ditch by said Blore, or anyone for him, or claiming under or through him. That said W. R. Blore ditch and the water thereto decreed has been wholly abandoned; that the plaintiff, Cary Culver, or Elvira Culver, his widow, or the defendant, has no right to the W. R. Blore ditch No. 2, or the water decreed thereto."

In its reply brief appellant says:

"We do not claim that the decree of 1883 determined that Blore was the owner of the right in question, but we do claim that the evidence did, and moreover that that decree did, determine that the water right in question was then alive, and that therefore all evidence of abandonment before 1883 was erroneously admitted."

The trial court did, however, in its decree, find that the decree of 1883 found that Blore *was* the owner of the ditch, in these words:

"And in said decree (1883) it was stated also that at the time of the said adjudication the said Blore was the owner of said ditch and entitled to. the water thereof * * *  ."

If this is at all material in this case then that part of the decree of 1883 just quoted is void to that extent, as it is the settled law in this state that in statutory proceedings for the adjudication of priorities and appropriations of water the court has no jurisdiction to determine ownership or property rights in the ditches, nor to determine who has the right to use the water awarded to the various ditches, canals, etc.; in other words, the district court can go no further than determine the priorities of the several ditches and amount of water awarded thereto.—*Oppenlander v. Left Hand Ditch Co.*, 18 Colo., 142; *Hallet v. Carpenter*, 37 Colo., 30; *Evans v. Swan*, 38 Colo., 92; *O'Neil v. Ft. Lyon Canal Co.*, 39 Colo., 487; *Woods v. Sargent*, 43 Colo., 268; *Park v. Park*, 45 Colo., 347; *Rollins v. Fearnley*, 45 Colo., 319; *Putnam v. Curtis*, 7 Colo. App., 437.

Another question raised by appellant is that of estoppel by admissions *in judicio,* the contention being (1) that in a certain suit brought in 1893, by plaintiff's grantor, against Laws, a water commissioner, his sworn complaint asserted the ownership of Blore No. 2 ditch to be in Blore, and that Blore had used the water decreed thereto through plaintiff's ditches (this suit was not determined, but was dismissed by stipulation on October 26, 1895); (2) that Culver appeared as a witness in the proceedings, which resulted in the decree of 1883, and gave testimony which tended to establish Blore's continuous use of the water through Blore No. 2 ditch. Both contentions may be considered together. It appears that after the "Laws" suit was instituted Blore was made a party thereto by order of court, but the record shows by

stipulation that he never made any appearance therein. As the suit was dismissed, nothing was adjudicated, and neither plaintiff nor defendant gained or lost anything thereby; nor does it appear from the record that defendant or its assigns were influenced thereby to change in any way their position or actions respecting their relations with the ditch or water rights claimed. Appellant contends, however, that it was damaged and injured by reason of the injunction writ preventing it, for several months, from using the ditch and water in question. In answer to this we say the record shows that when the suit was dismissed under the stipulation it was therein provided that no suit should be brought on the injunction bond; therefore, any injury sustained by defendant by reason of the enforcement of the writ of injunction was waived by it and it cannot now be heard to complain. The complaint was properly admitted in evidence in order that it might be considered by the trial judge as affecting the credibility of Carey Culver as a witness, but not to establish estoppel. The complaint itself contains a clear recital and statement to the effect that whatever rights Blore may have had in any of the ditches or water rights appurtenant thereto, they were subsequent titles and water rights to those of plaintiff himself, and that plaintiff had the oldest and first appropriation of water on the stream. It cannot be seriously contended that under these allegations plaintiff would be estopped at a subsequent time from claiming a prior right to that of defendant in the use of the water therein referred to. The allegations in the complaint were in no way attacked by defendant. Blore filed no answer or other pleading tending to raise an issue with plaintiff upon such allegations. He was a party to the suit, but chose to make no appearance therein. Plaintiff maintained his claim of paramount right and title to that of Blore and his assignees

in the subject matter of this suit, down to the time of this trial. So far as the pleadings in the "Laws" suit are concerned, plaintiff did not change his ground nor assume a position contrary to that assumed in that suit. We do not overlook the fact that the complaint contains other allegations tending to show a conflict with his claim of first appropriation of water on the stream. Had issue been taken by Blore upon plaintiff's claim, and trial had, we cannot say how he would have explained this apparent inconsistency. He may or may not have been able to do so. In this respect the complaint was clearly ambiguous, but we do not think, that in order to apply the doctrine of estoppel to him in such a case, the law would select from the complaint such statements as are against his interest and ignore those in his favor, particularly where the suit was dismissed and never tried. Some of the Tennessee cases cited appear to sustain appellant's contention, among which, and most relied on, are *Chilton v. Scruggs*, 5 Lea (Tenn.), 308, and *Grier v. Canada*, 119 Tenn., 17. In the first case the doctrine of estoppel was successfully invoked against defendant, on the ground that in a former suit he had pleaded and testifed that the note in litigation was valid, and that certain assets were in the hands of trustees for the payment thereof. Under these facts the court held that he could not plead the statute of limitations against the note in the main case. Both parties in the main case were parties in the former suit, and it was tried and determined. It can be well said that defendant's testimony and pleadings in the former suit were relied upon by Chilton and caused him to pursue a different course respecting the note than he would have had no such position been assumed by Scruggs in the former suit. Scruggs' action lulled him into a feeling of security, and rendered it unnecessary for him to give any thought to the statute of limita-

tions as applicable to the note in issue. In the absence of defendant's testimony and pleadings in the former suit, it is a reasonable presumption that Chilton would not have permitted the note to become barred by the statute. We think this case comes within the rule announced by our supreme court in *Fisher v. Denver National Bank, post*. In the second case, *Grier v. Canada*, the facts are not fully stated in the opinion, but enough appears to mark quite a distinction between that case and the one at bar. However, if that case goes to the extent claimed for it by appellant, it is not in harmony with the weight of authority as interpreted by us. It is a sound and salutary principle, sustained by ample authority, that the doctrine of estoppel as to real estate is not readily applied to prior sworn pleadings or testimony of a party, in the absence of a showing by the record that the party seeking to invoke the same has thereby been led to change his conduct, or been damaged, injured, or substantially prejudiced, or placed in such a position that he could not maintain or defend his property rights as successfully as he could have done had no such pleadings or testimony been made or given. In such cases opportunity is given for one to make a full explanation thereof when he is sought to be estopped thereby. The rule seems to be supported to some extent by *Fisher v. Denver National Bank*, 22 Colo., 373. We extract the following from that opinion, viz:

"A careful examination of all these cases (unless it be the cases from Tennessee) satisfies us that they are not authority for the ruling of the trial court. Fisher did not succeed in his former suit, nor was the plaintiff in this action a party to it, or injured by it. Had Fisher been successful, or obtained some advantage, the rule contended for would apply; but where, as in this case, he was unsuccessful, and the plaintiff here was not a

party there, or injured thereby, and the suit was never prosecuted to a termination, but dismissed, while it was proper in the case at bar to receive in evidence these former pleadings as affecting the credibility of the defendant Fisher, such former declarations would not constitute an estoppel against him, and he should have been permitted, if he could, to explain to the jury the circumstances under which he made the former inconsistent statements.—*Hyman v. Wheeler*, 29 Fed. Rep., 347; *Le More v. Nuckolls*, 37 Ala., 662; *Beatty v. Randall*, 5 Allen., 441; *McQueen's Appeal, supra.*"

In *Hyman v. Wheeler, supra,* an action in ejectment to recover mining property, Wheeler, one of the defendants, was shown to have been plaintiff in a prior suit against Markell and others, in which certain admissions were made by Wheeler in the complaint and affidavits, which tended to show that he asserted the existence of a certain vein in the Spar Lode mining claim; but in the main case he assumed a contrary position to that stated in the complaint and affidavits. In the main case it was sought to estop Wheeler by reason of this variance. Judge Hallett had under consideration a question similar to the one before us, and in his instruction to the jury spoke as follows:

"But, grouping them all together, they amount simply to the admission by J. B. Wheeler himself of the existence of a vein in the parts of the territory mentioned in the bill of complaint and affidavits, and this admission is not at all conclusive of the proposition contained in the bill of complaint and affidavits."

In *Beatty v. Randall, supra,* the following language is found:

"It was correctly ruled at the trial that the plaintiff was not estopped by his allegations in his bill in equity which he formerly brought against the defendant. At the

most they were evidence against the plaintiff, to be considered by the jury."

In *McQueen's Appeal, supra,* the court says:
"The verdict is not evidence that he committed perjury; it evidences that McQueen lost nothing by reason of the alleged payment. McQueen was not precluded from recovery in that suit by reason of the allegation of payment; had he been, the plaintiff would be estopped from now setting up that matter as a collateral."

From Cyc., vol. 16, p. 1050, we extract the following:

"Admissions in other judicial proceedings, for example, in an affidavit, or in a pleading—even in a sworn pleading—or in his testimony, or a plea of guilty in a criminal case, are not conclusive upon the party, but may be explained or contradicted in the same manner as purely extra-judicial admissions," citing many authorities.

We quote the following from *Sharp v. Swayne* (Del.), 40 Atl., 113:
"This is a statement, made in an affidavit filed in a mechanic's lien case, where the action has been stayed, and no judicial determination whatever had.    *    *    *

"The court therefore instructs you that the doctrine of estoppel is not applicable to the facts in this case. We do, however, instruct you that any and all statements and admissions, made by the defendant elsewhere, contrary to his evidence given upon the witness stand in this case, go to his credibility, and are so to be considered by you in making up your verdict."

In *Nicholson v. Snyder,* 97 Md., 415, discussing the doctrine of estoppel, the court said:

"In the case before us, nothing was actually decided in the former suit, that being dismissed by plaintiff upon

his own admission of inability to prosecute it to a successful termination, and it follows from the authorities we have cited that the answer in the bankruptcy proceedings, even if shown to be her answer, could not be held conclusive against her.''

In *Solomon Railroad Co. v. Jones,* 30 Kan., 601, part of the syllabus reads as follows:

''A verified petition filed in one case by a party is competent evidence against such party on the trial of another case, as a statement or admission, but is not conclusive, and carries nothing of estoppel.''

*Phoenix Insurance Co. v. Gray,* 113 Ga., 424. The syllabus contains the following:

''A party to a suit who testifies on his own behalf on a former trial, and who on a subsequent trial of the same case is offered as a witness, becomes in such subsequent trial an original witness, and is not 'estopped' from testifying contrary to his evidence as reported on the former trial.''

From the authorities cited the law seems to be that, as to admissions or statements made in pleadings, or on the witness stand in a former suit, the same are not conclusive in a subsequent suit against the one making them, but may be explained by him, and further, that they do not work an estoppel in the subsequent suit unless it appears that the party invoking estoppel was influenced by such admissions or statements to change his position, assume a different line of conduct, or otherwise adopt, to his detriment or damage, a different course of action, concerning the subject matter, than he would have adopted had no such admissions or statements been made.

In order to ascertain how far the rule is applicable in this case, let us consider defendant's situation as disclosed by the evidence. Defendant doubtless had the

right to rely upon the decree of 1883 and the record behind it, and it appearing therefrom that at the time the decree was rendered Blore had the first priority in, and the right to use the water through, Blore No. 2 ditch, it was justified in loaning the money to Blore and taking the security upon the faith of that record. The decree was conclusive against abandonment on the part of defendant at that time; but as to whether or not defendant or its grantors had wholly lost or abandoned the right to use the water subsequent to the rendering of the decree, the doctrine of *caveat emptor* applies. The decree in the instant case found that no abandonment took place prior to the decree of 1883, and that at that time Blore was the owner of, and entitled to, the water decreed to Blore No. 2 ditch, so any evidence admitted concerning abandonment prior to the decree of 1883, if error at all, was harmless.

It is claimed that in the general adjudication of water rights culminating in the 1883 decree, plaintiff testified that Blore had continuously applied the water appropriated by means of the Blore No. 2 ditch to a beneficial use, and that he should not now be permitted to change his position, and either testify to or base his claim upon an abandonment or non-user of said water prior to the time of said decree. We are of the opinion that in this respect the estoppel should apply. But, conceding this, if the evidence of non-user prior to the decree was inadmissible, nevertheless there was testimony of non-user for twenty years or more after the decree sufficient to justify the court's conclusion, without reference to the evidence of non-user prior to the decree, and it will be presumed that the court eliminated that testimony from consideration.

We have hereinbefore held that the conveyances under which appellee claimed to be the owner were admissi-

ble in evidence, although made prior to the 1883 decree, and in addition to the reasons there given we may further state that the admission was not prejudicial for two reasons: (1) it would not be an estoppel because the question of ownership was not there in issue, could not be determined, and was immaterial; (2) upon the issue of plaintiff's ownership of Blore No. 2 ditch, prior to the 1883 decree, or at any other time, the trial court held against him; therefore, appellant could not have been prejudiced.

As to the estoppel claimed by reason of the injunction suit in 1893, we think the contention cannot be sustained for the reason that in that pleading plaintiff asserted his priority of right as against Blore, although asserting the priorities of both himself and Blore as against any other appropriations; that his position in that case is not so inconsistent with his position in this as to operate to estop him; and besides the cause was never determined and the injunction might have been sustained upon Culver's claim in the Culver and Mahoney ditch, alone, without reference to the rights of Blore.

The briefs extensively discuss the proposition as to whether or not the warranty deeds from Shirley and Blore conveyed to grantees any water rights or ditches. The court found that the deed from Blore to Culver and Mahoney did not convey such water rights, which finding was in favor of defendant. Neither the abstract of record nor transcript thereof contain any assignments of cross-error by appellee, hence it will be unnecessary for this court to pass upon that issue.

In view of the conclusions reached, the judgment will be affirmed.

*Judgment Affirmed.*

Decided December 16, A. D. 1912. Rehearing denied January 13, A. D. 1913.