No. 11,482.

DAVIS, ET AL. *v.* HURT.

Decided February 7, 1927.

Action in injunction involving ditch and reservoir rights. Decree for plaintiff.

*Reversed.*

1. EVIDENCE—*Adjudication Decree.* In an action in injunction, involving ditch and reservoir rights, the admission in evidence of a prior adjudication decree—held by the Supreme Court to be without probative force—was error.

2. WATER RIGHTS—*Evidence—Adjudication Decree.* A water decree based upon an attempted adjudication which was wholly ex parte, without either actual or constructive notice to any one, is void, and the admission in evidence of such a decree in a subsequent injunction proceeding involving ditch and reservoir rights was error.

3. *Litigation—Effect.* The owner of water rights which were affected by litigation in which his predecessors in interest were parties is concluded by the decree entered therein as to matters litigated.

4.      *Litigation—Effect.* The owner of land and water rights is not concluded by a water decree entered in litigation the subject matter of which had nothing to do with his property.

5.      JUDGMENT—*Water Decree—Effect.* Parties are not concluded by a water decree where ditch and water rights claimed by them were foreign to the subject matter involved in the litigation.

6.      WATER RIGHTS—*Evidence—Intention—Diligence.* In an injunction proceeding involving the use of certain irrigation water, evidence as to the intention of the original appropriator, and on the question of diligence, held relevant.

7.      CONTRACTS—*Unusual—Proof.* Terms of an alleged contract conveying ditch and water rights reviewed, and held to be so unusual as to require proof by competent evidence.

8.      APPEAL AND ERROR—*Judgment—Sufficiency of Evidence.* The contention that the decree in an injunction suit concerning rights to certain irrigating ditches, reservoirs and water, was supported by evidence other than void adjudication decrees erroneously admitted, overruled, where the findings and legal conclusions of the court on important and material matters were based solely upon the objectionable evidence.

9.      EVIDENCE—*Water Adjudication Decree.* An adjudication decree, even if valid, is not admissible in evidence to prove ownership of ditches and water rights involved in litigation.

10.     *Erroneous.* Evidence erroneously admitted, and which is not cumulative, held not without prejudice to the complaining party.

11.     WATER RIGHTS—*Litigation.* In an injunction proceeding involving ditch and reservoir rights, asserted claims must be determined whether well founded or not.

12.     *Litigation.* In an injunction proceeding involving ditch and reservoir rights, all claims should be determined as to date and amount, without considering void statutory adjudications, and without reference to other water decrees which did not affect the rights of the parties.

13.     *Decree—Record.* The reviewing court recommends that decrees affecting water rights be filed of record under C. L. § 4902.

*Error to the District Court of Arapahoe County, Hon. S. W. Johnson, Judge.*

Mr. L. F. TWITCHELL, Mr. E. C. KING, Mr. STANLEY WALLBANK, Mr. CHARLES J. KELLY, for plaintiffs in error.

Mr. WILLIAM YOUNG, for defendant in error.

*En Banc.*

MR. JUSTICE ADAMS delivered the opinion of the court.

THE parties' names appear here in inverse order from that in the trial court. When not otherwise designated, defendant in error, Nellie Hurt, will be referred to as plaintiff, and plaintiffs in error as defendants, or as Davis and Mrs. Davis.

· Plaintiff obtained an injunction against defendants involving certain water, ditch and reservoir rights, and defendants have brought the case here for review.

All of the water involved comes from Sanderson's Gulch, in water district No. 8. The ditches concerned are Ward Ditch No. 1 and Ward Ditch No. 2. The latter was originally called Sanderson's Ditch, and is the older. Plaintiff owns No. 1, and defendants claim no interest in it, but contest its priority. All parties claim interests in No. 2. All are substantially agreed as to the date of priority of the No. 2 ditch, but not as to the quantity of water, nor as to its use as between plaintiff and defendants. The main dispute is over the No. 2 ditch. All agree that plaintiff and Davis have ditch and water rights in No. 2, but not as to what such rights are. Davis and Mrs. Davis agree that Mrs. Davis has ditch and water rights in No. 2, but plaintiff contends that she has none, and the court so found.

Defendants also own some small reservoirs constructed on the bed of Sanderson's Gulch, above the headgates of the two ditches, used for the irrigation of their lands, and plaintiff also has some small reservoirs on her land, supplied with water from the same gulch.

Davis is now the owner of the west eighty of the south half of the south half of the south half of a section of land, number nineteen, and Mrs. Davis owns the east eighty of the tract. The two together make a strip of land a mile long and a quarter of a mile wide, extending east and west. In 1882, one Belle M. Sanderson owned the entire one hundred and sixty, having acquired it by previous homestead entry and patent. Defendants claim their original rights by mesne conveyances from her. Plaintiff owns land in section twenty-one, about a mile east of Mrs. Davis' land, and claims her original rights by mesne conveyances from one Jasper D. Ward. The dispute involves only the water, ditch and reservoir rights.

On plaintiff's first cause of action, the court enjoined defendants from diverting water from J. D. Ward Ditch No. 2, for use on the east eighty, from cutting the banks of the ditch or "in any manner interfering with the adjudicated waters of said ditch east of the east line" of the west eighty. On the second cause of action it was decreed, "that the right of the plaintiff to the use of water from Sanderson's Gulch, decreed and adjudicated to the J. D. Ward Ditch No. 1 is superior, senior and prior to any right of the defendants, to take or impound water in their reservoirs from Sanderson's Gulch."

In 1881, Belle Sanderson, then the owner of the above one hundred and sixty acres in section nineteen, constructed a ditch on the west eighty, about one half mile in length, known as the Sanderson Ditch, now J. D. Ward Ditch No. 2, herein referred to as No. 2 ditch, taking water from Sanderson's Gulch through its headgate located near the west line of the west eighty. Belle Sanderson's chief efforts were devoted to the west eighty; she raised crops on a part of it, irrigated from the No. 2 ditch, which at that time emptied at its lower or east end, on the east eighty, which was used for pasture.

In 1882, there was more water in No. 2 ditch than Belle Sanderson needed at that time, but Ward did not have enough. They entered into a friendly oral agreement,

whereby Ward was to enlarge the ditch, and continue and
extend it over the Sanderson east eighty, and from thence
to Ward's lands, ditches and a reservoir in section twen-
ty-one, and it was so done. Both parties concede this
much, but differ materially as to the other parts of the
Sanderson-Ward agreement. Plaintiff contends that
Belle Sanderson surrendered to Ward all of her interest
in the ditch; that in consideration thereof Ward was to
enlarge, extend, maintain and keep the ditch, dam and
headgate in repair, and that Belle Sanderson was to re-
ceive from Ward's ditch water sufficient to irrigate
twenty acres in the Sanderson west eighty acres, amount-
ing in all to fifty-five inches of water, but none for the
east eighty. On the other hand, defendants say that un-
der the agreement Ward was to and did acquire a mere
license, and not an ownership or easement in the ditch,
to use the surplus water when Belle Sanderson did not
need it for use on any of her one hundred and sixty acres.
Differences in belief as to the terms of the Sanderson-
Ward agreement have led to periodical disputes and liti-
gation between claimants extending over a quarter of a
century, in the county court, district court, court of ap-
peals, and supreme court. Four of these previous cases
were received in evidence and are a part of the basis of
award in the instant case, and therefore will require a
brief reference to them in this statement of the facts.

In 1900, in the district court of Douglas county, Robert
P. Rollins, plaintiff's remote grantor, sought and ob-
tained in an attempted statutory adjudication of water
rights in water district No. 8, decrees as follows: To J. D.
Ward Ditch No. 2, seven and five-tenths second feet, date
of priority, November 17, 1881; to J. D. Ward Ditch
No. 1, one and five-tenths second feet, date of priority,
December 31, 1882; to Home Reservoir, seven and five-
tenths second feet, to be diverted through J. D. Ward
Ditch No. 2 during the non-irrigating season. Rollins
was alleged to be the owner of them all. No rights ex-

cept those in Sanderson's Gulch were attempted to be adjudicated.

In 1912, in the same court, in an attempted statutory adjudication, supplementary to the 1900 decree, Rollins obtained an additional award of three second feet to J. D. Ward Ditch No. 1, to date from March 4, 1901.

In 1910, in a suit by plaintiff's grantors against Harry C. Davis' grantors, in the same court, a decree was entered, quieting title to ditch and water rights in J. D. Ward Ditch No. 2. It was partially in plaintiff's favor, and was affirmed on appeal. *Rollins v. Fearnley Inv. & Real Estate Co.,* 25 Colo. App. 85, 136 Pac. 95; Id., 60 Colo. 495, 152 Pac. 1197. Mrs. Davis, or her predecessor in interest to the east eighty, were not parties, and no such rights or claims were determined. The suit did not involve the No. 1 ditch, nor any of the reservoirs.

In 1918, in Marshall v. Woodruff, a suit between plaintiff's grantor and Harry C. Davis' grantor, in the same court, the decree in *Rollins v. Fearnley, etc., supra,* was construed and defined. The subject matter was the same as in Rollins v. Fearnley, and Mrs. Davis or her predecessor in interest were not parties, nor were their rights determined.

The first two decrees mentioned, those of 1900 and 1912, were attempted to be brought under the water adjudication statutes; the last two, those of 1910 and 1918, were brought under the Code of Civil Procedure. They were all admitted in evidence, and defendants assign error thereon.

1. As to the first one, that of 1900, the court held in the instant case that it was not subject to collateral attack, but its probative force was denied in strong language by Mr. Justice Bailey in *Rollins v. Fearnley,* 45 Colo. 319, 101 Pac. 345. In that case, Rollins, plaintiff's remote grantor, was seeking to establish the validity of this same adjudication against Fearnley, defendants' remote grantor. Counsel for defendants in the case before

us urge other reasons why the 1900 adjudication is void, but we think that the court's denunciation of the method in which it was obtained by Rollins, found in 45 Colo. 319, at page 326, is sufficient. It was error to admit it. We refer again, in paragraph 6 hereof, to the evidence in the 1900 adjudication.

2. . The 1912 attempted adjudication, for three additional second feet of water to the No. 1 ditch, was wholly ex parte, without either actual or constructive notice to anyone. It was based on the 1900 decree, and is void for the same reason. Counsel for plaintiff argues that it is cured by "An act in relation to notice in water proceedings," L. 1905, ch. 112, C. L. § 1766, but the act cannot be applied here. Without attempting a discussion of what discretionary powers are or are not vested in the trial court by this act, to dispense with notice or service of process under a variety of circumstances, we need only to say, that to sustain the 1912 decree, an offshoot of the void 1900 decree, would be to give our approval to a renewal of the secret advantage sought to be obtained in 1900. It cannot be done, and the admission of each was error, prejudicial to both defendants.

3. As to the two decrees obtained in 1910 and 1918, brought under the Code, there is no claim made that Harry C. Davis, who is a lawyer, did not know about them when he bought the land. They involved his portion of the ditch, and his predecessors in title were parties. He and plaintiff are concluded by these suits, as to the matters there litigated. The defendant, Jane T. Davis, is not concluded thereby, whether she had notice of them or not, and it was error to so hold, for one thing, because the subject matter of either of these equity suits had nothing to do with the ditch or water rights claimed for the east eighty. Neither of the defendants, however, are concluded by such suits as far as the alleged priorities for the No. 1 ditch, or the reservoirs claimed by either parties, are concerned, for such questions were

foreign to the subject matter of the 1910 and 1918 decrees.

4. By mentioning places of use, we are not to be understood as saying that a water appropriation can be used only on the land where the right ripened, nor do we understand that the trial court took such a view. The acreage is referred to only to help in ascertaining the amount of water beneficially used, and as an aid in determining the identity of the parties affected.

5. Defendant Mrs. Davis should have been allowed to prove Belle Sanderson's intentions as to the future use of her appropriation. The question of diligence was also relevant.

Warren testified that when he and his sister, Belle Sanderson, were on the place, some water had been run to grow grass on the pasture in the east eighty. If plaintiff's idea of the Sanderson-Ward agreement is correct, which is, in effect, that Belle Sanderson, with a one hundred and sixty acre homestead, partially developed, and with plenty of water, voluntarily surrendered all of her ownership in all of her ditch and water, with an agreement that Ward would let her use only fifty-five inches of her own water, also that she gave him a perpetual easement or right of way for an enlarged ditch over her own land that neither she nor her grantees should ever have the use of for the carriage of No. 2 water, or any other water, for half a mile of its length, not reserving enough water to even wet her pasture land, merely in consideration of Ward's upkeep of the ditch—we remark that if she made this most unusual contract, it must be proved by competent evidence. Both defendants are enjoined from cutting the ditch on the east eighty. Defendants do not plead the benefits of C. L. § 4870, requiring water rights to be conveyed with the same formality as in the conveyance of real estate, and under the case made, we do not say whether the statute is applicable, but the only evidence hinting at such an arrangement as plaintiff claims, is contained in ex parte affidavits attached to the

attempted statutory adjudication of 1900, which we have held void as to Belle Sanderson's grantees in *Rollins v. Fearnley, supra,* in the 45th Colorado report.

6. Counsel for plaintiff argues that there is enough evidence to fully support the decree, independently of the four preceding cases mentioned, but we think not. The findings in the case at bar are inseparably interwoven with them, and the present findings contain statements of fact and conclusions of law on important and material matters based solely upon the objectionable evidence referred to. An illustration of this is an ex parte affidavit of Ward, procured by Rollins and incorporated in, and made a part of, the 1900 adjudication. Plaintiff's counsel, while admitting that it is not contemplated by the statute that a statutory decree, fixing dates and amounts of water priorities, shall settle the ownership of the various ditches, or the rights of the consumers as between themselves (*Rollins v. Fearnley, supra*), nevertheless plaintiff relies on the above affidavit to prove that plaintiff is the owner of a dominant estate—a perpetual and exclusive easement over the east eighty—that not even the owner of the land may share for her own irrigation purposes. Plaintiff also relies upon the same affidavit to prove that Mrs. Davis' grantor made a parol assignment of all the water that Mrs. Davis now claims. From this it will be seen that even if the 1900 adjudication had been good as a water decree, it still could not have been properly used in evidence for the purpose that it served here, because, both as to ditch and water rights, it went directly to the question of ownership, the basis of the injunction.

The Ward affidavit evidence as to the supposed terms of the Sanderson-Ward agreement was not cumulative, and cannot be said to be without prejudice to defendants. Defendants' side of the story is the testimony of Fred Warren, the only living witness to the agreement. Warren represented his sister, Belle Sanderson, in the deal

with Ward. Warren's version of the arrangement is different from that of plaintiff.

Furthermore, both parties claim appropriations for ditches and reservoirs subsequent to 1881, all of which are affected by the findings and decree in this suit.

7. The distinction between a ditch right and a water right must be kept in mind because of Mrs. Davis' claim that she not only owns *water* by virtue of the original construction of No. 2 ditch, to be carried therethrough, but also on account of defendants' claim that they have the right to carry water from another ditch—the Agricultural Ditch—through No. 2 ditch, and also to carry water appropriated from other sources, through the same No. 2 ditch. These claims must be determined, whether well founded or not. It is a mistake to say that Mrs. Davis bases her claim to ditch and water rights upon the reservation in the Sanderson-Ward agreement. She asserts, rightly or wrongly, a claim by virtue of the original construction of the No. 2 ditch, under an appropriation initiated in 1881 by her remote grantor, Belle Sanderson. She disputes the terms of the contract, for which plaintiff contends, and paragraph four of plaintiff's complaint, as well as Fred Warren's uncontradicted testimony, show that Belle Sanderson did the first work on the ditch, and that Ward came in afterward.

The disputes of the parties and their grantors have led to such a multiplicity of suits, with indications of more, that we hope that they may be terminated in a case where the rights of all interested parties will be protected. All claims must be determined as to date and amount, without the handicap or confusion of the two attempted statutory adjudications, and without reference to the two decrees of 1910 and 1918, except as above indicated.

8. The futility of this suit is not due to any fault of the learned trial judge, but rather to the backwardness of the litigants in the previous cases to apprise their adversaries of what they were doing in the court room, so severely criticised by Mr. Justice Bailey in *Rollins v.*

*Fearnley, supra.* Blame cannot be attached to the court or referee in the previous cases, for manifestly they could not know in advance whose claims were involved, without being told, especially when informed that there were no other claimants. When final decree is entered, we recommend that a certified copy be filed in the county clerk and recorder's office, as permitted by C. L. § 4902, to give notice as there provided.

The judgment will be reversed and new trial granted, with directions that either party be allowed to amend their pleadings, as they may be advised, and new parties brought in, if any there be, necessary to a complete and final determination of the controversy.

MR. JUSTICE CAMPBELL not participating.